BUTLER v. WESTERN UNION TELEGRAPH CO.

1. EXCEPTIONS alleging that Judge should have sustained demurrer, that he should not have overruled demurrer, are too general.

2. TELEGRAMS—DAMAGES, EXEMPLARY—MENTAL ANGUISH—PLEADINGS—CAUSE OF ACTION.—A father has a cause of action against a telegraph company for failure to deliver a telegram sent by his son-in-law to a third party for the benefit of the father, and he need not set out the telegram in his complaint, nor allege actual

damage, but he may recover exemplary damages for mental anguish upon allegations that failure to deliver was wilful, wanton and gross negligence on the part of the defendant.

MR. CHIEF JUSTICE MCIVER *dissents.*

Before TOWNSEND, J., Richland, November, 1900.   Affirmed.

Action for damages for failure to deliver a telegram by Jacob W. Butler against Western Union Telegraph Company.   From order overruling demurrer, defendant appeals.

*Messrs. Smythe, Lee & Frost, R. W. Shand* and *George H. Feasons,* for appellant, cite: *Damages to feelings are compensatory:* 8 Ency., 2 ed., 661; 34 S. C., 324.   *Law governing punitive damages in S. C.*: 35 S. C., 486, 501; 22 Stat., 693.   *In actions ex contractu, punitive damages are not recoverable:* 12 Ency., 2 ed., 410; 20 S. C., 520; 5 S. C., 358; 53 S. C., 410; 45 S. C., 344; 40 S. C., 524; Cooley on Torts, 106; Pom. Rem. & Rem. Rights, 567-573; 88 N. Y., 638; 47 N. Y. S., 1057; Hutch. on Car., 2 ed., sec. 744; 23 S. R., 139; 5 S. C., 358; 34 N. Y. S., 144; 6 S. C., 130; 11 S C., 337; 40 S. C., 393; 54 S. C., 498.   *Damages alleged are too remote to be cognizable:* 12 Ency., 2 ed., 529; 1 Suth. on Dam., p. 748; 19 Am. Rep., 12; 75 N. W., 343; 51 S. W., 858; 48 Pac., 918; 34 S. W., 762; 53 S. C., 213; 34 S. C., 32; 35 S. C., 504.   *Damages cannot with certainty be attributed to defendant:* 25 Ency., 839; 54 S. W. R., 826; 38 S. W. R., 635; 27 S. W. R., 52; 26 S. W. R., 490; 96 F. R., 81; 24 S. R., 535; 53 P. R., 252; 25 S. C., 68; 19 S. C., 223; 19 S. C., 229; 54 N. E. R., 775.   *Damages claimed not in contemplation of parties at sending of message:* 9 Ex., 341; 25 S. C., 70; 40 S. C., 525.   *No privity between parties:* 13 Rich., 108; 7 Ency., 2 ed., 110; 65 Am. Dec., 574; 63 Am. Dec., 618; 1 Esp. N. P., 386; 11 Met., 290; 8 Ency., 2 ed., 598, note; 10 M. & W., 109; 40 La. Ann., 183; 54 S. W. R., 825.   *No facts alleged of a character to justify punitive damages:* 34 S. C., 324; Wood's Mayne

on Dam., 59; 35 S. C., 489; 28 S. C., 396; 34 S. C., 62; 71 Fed. R., 21; 33 S. C., 217; 35 S. C., 308; 37 S. C., 386.

*Messrs. P. H. Nelson* and *Melton & Belser,* contra, cite: *Elements of the case of action for exemplary damages:* 5 Ency., 21; 35 S. C., 487, 501; Hale on Dam., 295. *The action is one in tort:* Bish. on Non-Con. Law, sec. 4; 26 Ency., 73; 1 Add. Torts, 27; 12 L. R. A., 113, note; 61 Md., 619; 64 Mo., 440; 6 S. C., 130; 20 Gantt, 264; 1 Sid., 36; 45 L. R. A., 160; Cou., art. IX., sec. 3. *In such actions it is proper to allege the contract:* 3 Ency. P. & P., 849; 3 East, 70; 12 East, 89; 1 Bing. N. Cas., 162; 6 Vt., 151; 10 Vt., 457; 40 Vt., 326; 71 Ill., 540; 2 Ill. App., 150; 12 Ency., 2 ed., 20; 54 S. C., 498; 6 S. C., 130. *As to plaintiff's right to sell:* 3 Suth. Dom., 21, 66; 128 Ill., 228; 39 Kan., 93; 1 Daly (N. Y.), 547; 110 N. Y., 403; 107 N. C., 370; 86 Tenn., 695; 36 Kan., 246; 30 Am. & Eng. Corp. Cases, p. 615, *note;* 6 L. R. A., 846; 109 N. C., 527; 45 L. R. A., 160; 6 S. C., 369; Sedg. Dom., 878; Hale on Dam., 266. *Plaintiff is entitled to both nominal and exemplary damages on his allegations:* 1 Suth. Dam., sec. 10; 1 Estee on Plead., 114; 3 Ency. P. & P., 848, 849, note; 5 Ency. P. & P., *note;* 54 S. C., 498; 1 Suth. Dam., 845; 53 S. C., 214. *Exemplary damages may be based on mental anguish:* 12 Ency., 2 ed., 30; Lewis v. Tel. Co., 35 S. C., 493; 54 S. C., 498; 53 S. C., 210. *Right to recover nominal damages is sufficient basis for exemplary damages:* Hale on Dam., 208, note; 12 Ency., 2 ed., 30; 63 Miss., 500; 68 Me., 279; 50 Wis., 645; 32 L. R. A., 548; 93 Ala., 9; 73 Fed. R., 196; 23 Fed. R., 229; 35 S. C., 486, 501; 37 S. C., 199; 38 S. C., 487; 53 S. C., 210.

December 11, 1901. The opinion of the Court was delivered by

MR. JUSTICE POPE. This is an action for $1,950 damages. The cause came on to be heard before Judge Townsend upon a demurrer to the complaint, which demurrer was

refused.   Thereupon an appeal was taken to this Court. In order to properly understand the questions involved, it will be well to reproduce the complaint, the demurrer and the grounds of appeal.   These in their order are as follows:

The complaint in its first article alleges that the defendant is a corporation under the State of New York, engaged in the business of telegraphing for hire, having offices in the city of Columbia, S. C., and in the town of Abbeville, S. C.

"2.  That on the 3d day of April, 1899, one J. B. Spivey, the son-in-law of the plaintiff, presented to and filed with the defendant, at its office in the said town of Abbeville, the following message: 'Mr. H. F. Jumper, No. 709 Lumber street: Wife very ill.   Come at once.   Let parents and G. B. Spivey know.   J. B. Spivey.'

"3.  That the defendant at said time and place received said message and promised promptly to transmit by telegraph and deliver the same to the said H. F. Jumper at his said address in the said city of Columbia, and that the said J. B. Spivey, in consideration thereof, then and there prepaid to the defendant its regular charges.

"4.  That at said time the wife of the said J. B. Spivey, mentioned in the said message, was critically ill; that the plaintiff is her father and one of the parents mentioned in said message, and that the same was presented to and received by the defendant to be transmitted and delivered as aforesaid for the plaintiff's benefit, of all of which defendant was apprised at the time of the presentation of said message to it as aforesaid; and that plaintiff on his part in all respects fully complied with the terms and conditions of said agreement.

"5.  That although the said H. F. Jumper was at his residence, at said No. 709 Lumber street, in said city, during the whole of the said third day of April, when said message could and ought to have been delivered to him and all of the following day, and although his said residence was within easy reach of the defendant and within its regular delivery limits in said city, the said defendant, wilfully, wantonly

and grossly, negligently failed promptly to deliver said message, and the same, through the wilful, wanton and gross negligence of the defendant aforesaid, was not delivered, or offered to be delivered, to the said H. F. Jumper, or any one for him, until the 7th day of April, 1899, upon demand then being made by the said H. F. Jumper therefor at defendant's office in the said city of Columbia; and that in the meantime, on the night of the 5th day of April, 1899, the said wife of the said J. B. Spivey died of said illness, and her remains were forwarded by railroad to Killians, in the said county of Richland, for interment.

"6. That by reason of defendant's said wanton, wilful and grossly negligent failure promptly to deliver said message, as aforesaid, the plaintiff was deprived of seeing and being with his said daughter before her said death, and of accompanying her remains from the said town of Abbeville to the said Killians, and of providing for their proper reception, upon their arrival at their destination at Killians, was subjected to great mental anguish and suffering, and suffered damage in the sum of $1,950.

"7. That on the 31st day of May, 1899, the plaintiff notified the defendant of the matters and things hereinabove set forth, and presented his claim in writing to said defendant for said sum by reason thereof, but the defendant has failed to pay the plaintiff said sum, or any part thereof, and has wholly ignored plaintiff's said claim.

"Wherefore, the plaintiff demands judgment against the defendant for the sum of $1,950, and for the costs and disbursements of this action."

DEMURRER AND NOTICE.—"You will take notice that at the call of this cause for trial and after reading the complaint, the defendant will move the Court for an order dismissing the complaint on the grounds that it does not state facts sufficient to constitute a cause of action, in that the facts stated show (1) no duty of defendant to the plaintiff; (2) no right of action by plaintiff against defendant; (3) no knowledge by defendant that plaintiff's movements would

be affected by contents of the telegram, and (4) no injury done by defendant for which the defendant is answerable in damages to plaintiff."

Then defendant gave a second notice of grounds for the demurrer as aforesaid:

"Please take notice that the defendant demurs to the complaint for the reason that the same does not state facts sufficient to constitute a cause of action, in that 1. The action is for punitive damages, and arises *ex contractu.* 2. The action is for punitive damages, and there are no actual damages alleged. 3. The complaint fails to show that the default alleged against the defendant was the cause of any damage to the plaintiff. 4. The complaint fails to allege any duty owed by the defendant to the plaintiff for breach of which it is liable in damages. 5. The complaint fails to allege facts which show *prima facie* that the plaintiff is entitled to exemplary or punitive damages."

Judge Townsend overruled the demurrer in a short order, and defendant appealed on the following grounds:

"1. Because his Honor should have sustained the demurrers to the complaint.

"2. Because his Honor should have held that the complaint did not state facts sufficient to constitute a cause of action, for the following reasons, or one or more of them: (a) Because the complaint failed to show that there was any duty owed by the defendant to the plaintiff. (b) Because the complaint failed to show that there existed on behalf of the plaintiff any cause of action against the defendant. (c) Because the complaint failed to show any knowledge on the part of the defendant that the plaintiff's movements would be affected by the contents of the telegram. (d) Because the complaint failed to show that the plaintiff has suffered any damage of any character.

"3. Because his Honor should have held that the complaint did not state facts sufficient to constitute a cause of action for the following reasons, or one or more of them: (a) Because the action is for punitive damages, and arises *ex*

*contractu.* (b) Because the action is for punitive damages, and no actual damages are alleged to have been suffered. (c) Because the complaint fails to show that the default alleged against the defendant was a cause of any damage to the plaintiff. (d) Because the complaint fails to allege any duty owed by the defendant to the plaintiff, for the breach of which it is liable in damages. (e) Because the complaint fails to allege facts to show *prima facie* that the plaintiff is entitled to exemplary or punitive damages.

"4. Because his Honor should not have overruled the demurrer."

The great danger to a demurrant is that, for the purpose of testing the sufficiency of the facts alleged in a complaint as a cause of action, he admits those facts to be true. This Court endeavors to be very careful when considering the facts alleged in a complaint, to say that we do not intend to pass upon the truth or falsity of such facts except for the purposes of the demurrer. The complaint here alleges:

*First.* That the defendant is incorporated under the laws of the State of New York, and is engaged in the city of Columbia, S. C., and the town of Abbeville, S. C., in the business of telegraphing *for hire.*

*Second.* That the telegram, whose delayed delivery is the cause of this contention, was delivered by J. P. Spivey, who is a son-in-law of plaintiff, Joel W. Butler, on the 3d day of April, 1899, to an agent of the defendant, and the hire actually paid on that day for the delivery of the telegram to Mr. H. F. Jumper, at his residence, No. 709 Lumber street, in the city of Columbia, S. C. [which is about 100 miles distance from Abbeville, S. C.]

*Third.* That at the date of the delivery of the telegram to the defendant for transmission to Columbia, to wit: the 3d day of April, 1899, the wife of J. P. Spivey, who was the daughter of the plaintiff, Jacob W. Butler, was critically ill.

*Fourth.* That the defendant, the telegraph company, when it took the telegram in question, promised to promptly transmit the same, and was so received to be transmitted and de-

livered as aforesaid *for the plaintiff's benefit* (italics ours). That the defendant was apprised of plaintiff's relationship to Mrs. Spivey and that said plaintiff's daughter lay critically ill in the town of Abbeville, and that one of the purposes of the telegram in question was to apprise the plaintiff, as her father, of her critical illness.

*Fifth.* That although Mr. Jumper, as the addressee named in the message, lived within easy reach of defendant's office in the city of Columbia, S. C., and defendant knew the street and the number on the street in said city, yet the defendant, having received said dispatch on the 3d day of April, 1899, did not deliver the same until the 7th of April, 1899, and then only when the addressee demanded the dispatch of the defendant.

*Sixth.* That Mrs. Spivey died on the 5th day of April, 1899, but the plaintiff, as her father, received no notice of it, and did not, therefore, attend her bedside, nor was he apprised of her death until after her remains reached the village of Killians, S. C., and when no preparations had been made for her burial.

*Seventh.* That the plaintiff alleges that the failure of the defendant to deliver the telegram was wanton, wilful and gross negligence, and by reason thereof the plaintiff being denied the privilege to attend his dying daughter's bedside and also of accompanying her remains to Killians, S. C., and prepare for her burial near there, was grievously afflicted, his mental anguish and suffering was great—to wit: being damaged by the defendant in the sum of $1,950, for which sum he asks judgment against the defendant.

Under this state of facts the defendant asks us to hold that the plaintiff has not set out in his complaint a cause of action against it. The first and fourth grounds of appeal are dismissed for the simple reason that no specific error is pointed out in the same, it being alleged in the *first,* that the Circuit Judge ought to have sustained the demurrer, and in the *fourth,* that he ought not to have overruled the demurrer. This will do not great harm to the defend-

ant-appellant, as his other exceptions cover specific allegations of error.

It seems to us that the preliminary question is suggested by the subdivision (b) of the second ground of appeal, for if the plaintiff has by his complaint failed to show that any cause of action existed in him as against the defendant, then we need go no further. If the *plaintiff* has shown by his complaint that he has no legal claim for redress by the defendant, why his attempted cause of action is futile. But, under the facts alleged in the complaint, has the defendant no duty which it owes to the plaintiff which the defendant has refused to render? It looks to us that when the plaintiff alleged in his complaint that a certain telegram, delivered to defendant for transmission for hire, under a knowledge that Mrs. Spivey was very ill, coupled with the words "come at once; let parents know," and, further, as is stated in the complaint, that "the defendant knew at that time that it was for the plaintiff's benefit" the telegram was being sent, and the defendant, under these circumstances, wantonly, wilfully and negligently failed to send the telegram, there arose a legal duty to the plaintiff owed by the defendant. It is suggested that there was no contract betwixt the plaintiff and the defendant. There was no actual contract between the plaintiff and defendant. But the plaintiff is not suing on the contract. The defendant is not an ordinary person, under the law. Enjoying, as it does, the position of a common carrier, it is invested with a *quasi* public character. Just as a railroad has made no actual contract with the husband who goes to its station to meet a wife and child coming in at night on a passenger train, on a railroad, such railroad has made no contract with such husband to keep the approaches to its station in such a condition that no injury shall happen through the railroad's fault, and yet if such husband is injured through such fault, the railroad owes a duty to such husband, and when he is injured the railroad can be made to pay him damages. *Izlar v. Railroad Co.,* 57 S. C., 332. And in like manner the rail-

road receives goods of A. to be delivered to B., and such goods so shipped are lost through the negligence of the railroad, and it turns out that the goods, so received by the railroad, consigned to B., were owned by C., and that fact is unknown to the railroad as a common carrier for hire, yet C. has a right of action therein against the railroad, because the common carrier owed a legal duty to the owner, C., for whose benefit such goods were being transported; and this, too, when C. was unknown in the contract for the transportation of such goods.   3 Ency. of Plead. & Prac., 835, states the rule thus: "Though an agent makes a contract for the transportation of goods without disclosing the fact that he is acting merely as agent, his principal is entitled to sue the carrier for loss or injury to the goods." And in the note many cases are cited in support of this view, amongst which are the cases of *New Jersey Steam Nav. Co.* v. *Merchants' Bank,* 6 Howard (U. S.), 379, and *Elkins* v. *Boston etc. R. R. Co.,* 19 N. H., 337.   In the latter case cited, "when plaintiff's agent placed plaintiff's coat in a bundle with his own coat, and delivered it to defendant for transportation without disclosing plaintiff's name, *plaintiff was entitled to sue defendant for the loss of the coat."*   In the Constitution of 1895, adopted by this State, in art. IX., sec. 3, it is declared: "All railroads * * * engaged in transportation for hire, and all telegraph and other corporations engaged in the business of transmitting intelligence for hire, are common carriers in their respective lines of business, and are subject to liability and taxation as such."   This quotation is made just here, that we may keep in our minds that the defendant, being a common carrier for the transportation of intelligence for hire, enjoys a *quasi* public character, and thereby owes to the public duty with reference to its business, and may be made liable for a breach of duty.   The liability of such common carriers is not only for breaches of contracts, but also for delicts—not only liable *ex contractu,* but *ex delicto.*   So that it thus appears that a contractual relation between the plaintiff and defendant is not essential.

The liability for a breach of the duty owed by the defendant to the plaintiff may arise in instances where the contract is made for the *benefit of the* plaintiff. In the case of *Simson* v. *Brown,* 68 N. Y., 355, the following language occurs: "It is not every promise made by one to another, from the performance of which a benefit may inure to a third, which gives a right of action to such third person, he being neither privy to the contract nor to the consideration. *The contract must be made for his benefit as its object, and he must be the party intended to be benefitted.*" When the language just quoted was embodied in the opinion of the Court in *Burton* v. *Larkin,* 36 Kan., 246, the Court went on and said: "We think this is a correct statement of the law"—citing many cases—"of course, the name of the person to be benefitted by the contract·need not be given if he is otherwise sufficiently described or designated. * * * In any case, when the person to be benefitted is in any manner sufficiently described or designated, he may sue upon the contract." In the case of *Western Union Telegraph Co.* v. *Adams,* 6 L. R. A., 844, where there was a contest over this telegram: "To F. E. Adams, Athens. Clara come quick. Rufe is dying. O. M. Simmons," by which it was sought to defeat an action by F. E. Adams, the addressee, in behalf of his wife, "Clara," named in the telegram, by alleging that she ("Clara") had no "right of action." The Court said: "If, in fact, the message was sent for the benefit of Mrs. Adams (the "Clara" named in the telegram) and she was the damaged party, we can see no good reason why her husband may not maintain the suit"—citing a number of decisions in support of the position. That Court further said: "The party in fact to be accommodated, benefitted or served, holds the beneficial interest in the contract. When that one sustains damage from its breach, a right of action arises in his (or her) favor. * * * We think the question as to who may maintain a suit for damages for the breach of contract does not depend upon the payment of the fee, nor upon the question whether the sender had been previously constituted an agent for that pur-

pose by the party to whom the dispatch is sent, but upon who, in fact, was to be served and who is damaged. * * * If the sender, from motives of friendship or any other cause, is willing to confer upon the receiver a benefit and he is willing to accept it, and out of the transaction there results damage, for some one to receive and for the corporation to pay, the want of the technical relationship of principal and agent between the other parties ought not to inure to the benefit of the telegraph company, to the exclusion of the only party for whose use the other parties intended the transaction." So, too, in the case of *Sherrell* v. *Telegraph Co.,* 109 N. C., 527, in the matter of this telegram : "To Mr. Franklin Sherrill, Statesville, North Carolina.   Tell Henry to come home. Loy is bad sick, M. C. Sherrill."   By the complaint it was alleged that "Henry" referred to in the telegram was the father of "Loy," who was spoken of therein as being "bad sick," that the message was sent for the benefit of "Henry," the plaintiff.   In the demurrer it was alleged: "That this complaint did not state facts sufficient to constitute a cause of action in favor of the plaintiff, in that it appears from the face of the complaint that the message in question was sent by one M. C. Sherrill to one Franklin Sherrill and not to the plaintiff, and it is not alleged in the complaint that the said Franklin was the agent of the plaintiff to receive and communicate said message to the plaintiff, nor does it appear from the complaint that there exists any privity between the plaintiff and the Franklin Sherrill in respect to the alleged contract for sending said message, nor that there was any contract between the plaintiff and the defendant in respect to the said message, nor that any contractual relations existed between the plaintiff and the defendant growing out of this alleged contract between M. C. Sherrill and the defendant under which said message was sent.   The Supreme Court of North Carolina said, *inter alia:* "It appears in the complaint that the telegram was sent by his sister, whom the plaintiff left in charge of his home in Indiana, * * * in regard to the illness of his daughter * * * and it was directed to his

father, at whose house, in this State, he was on a visit, 'for the use and benefit,' it is alleged, 'of the plaintiff,' and defendant contracted to deliver it at such house * * * The telegram requested the father to tell the plaintiff to come home, that his daughter was very ill.    The plaintiff could, therefore, maintain the action both because the sister was his agent for the purpose of sending the telegram, *and also* because the plaintiff was the beneficial party in the contemplation of the contract of sending the message, since it was on its face sent for his benefit, and he was the party who alone would be injured by its negligent delay or non-delivery, and it is averred that the defendant received the message to be transmitted 'for the use and benefit' of the plaintiff.    The demurrer, on the second and third grounds, was, therefore, properly overruled."    Hale on Damages, 266, puts the doctrine thus : "When the action by the consignee is regarded as sounding in tort, the liability is based upon the breach of the public duty imposed on telegraph companies to transmit messages.    Every contract made by a telegraph company is made in pursuance of a duty imposed upon it by the State, and any breach of it is not only a breach of contract, but a tort; for the duty assumed involves the performance of this contract, not merely as it affords the sending but as it affords the delivery.    The telegraph company is under a duty to all the world, and a breach of its contract with the sender is a breach of this duty as it affects the receiver" (Sedg. Dam., 878).    There is negligence or wilful conduct resulting in damages, and this, as has been seen, attaches liability. Hence we conclude that the plaintiff has capacity to sue under the allegations of his complaint in the present action.

The next question we will consider is somewhat akin to the first and yet is different from it.    Has the plaintiff set out in his complaint a cause of action against the defendant? We must bear in mind that there is a difference existing between compensatory damages and exemplary damages.    In this action the plaintiff seeks to recover the latter.    The defendant recognizes the force and effect of our late decision of

*Lewis* v. *Western Union Telegraph Co.,* 57 S. C., 331, where this Court said : "As to the third exception, we think the Circuit Judge was correct in holding that exemplary damages may be recovered of a corporation for its negligence, when there is any evidence of wantonness, or wilfulness, or recklessness, or malice on the part of the agent or agents of such corporation—for example, of the telegraph company here sued.    We think our cases of *Samuels* v. *R. R. Co.,* 35 S. C., 493, *Pickens* v. *R. R. Co.,* 54 S. C., 498, *Gillman* v. *R. R .Co.,* 53 S. C., 210, abundantly support this doctrine." Jacob W. Butler in his complaint has charged the defendant with having neglected to deliver the message from malice, from wantonness, from wilfulness.    According to our cases of *Poole* v. *Duckett,* 34 S. C., 311, *Spellman* v. *R. R. Co.,* 35 S. C., 475, *Samuels* v. *R. R. Co.,* 35 S. C., 493, through the cases of *Gillman* v. *R. R. Co., supra,* and *Pickens* v. *R. R. Co., supra,* the use of the words "from malice," "from wantonness," "from wilfulness," or words of similar import, in a complaint has been deemed sufficient to point out to the defendant that he must meet a case where exemplary damages are claimed.    We must say, that if the defendant did maliciously, wantonly or wilfully withhold this telegram, so that this plaintiff was unable to close the eyes of his daughter in · death or to prepare her grave for burial, that the plaintiff alleging these facts in his complaint has set out a cause of action against this defendant.

2.  Grounds of appeal : (a)  We cannot say the defendant owed no duty to the plaintiff ; for if the facts be as alleged in the complaint, he did owe him the duty of promptly delivering the telegram in question.    (b)  We cannot say that there was no cause of action, because, as we have just held that, under our decisions, the allegations of facts in the complaint showed such cause of action to exist.    (c)  It makes no difference that the defendant placidly speaks of want of knowledge that plaintiff's movements would be affected by the telegram ; bad as poor human nature may be, it is not unnatural that the plaintiff is greatly moved at his failure to

reach the bedside of his dying child or to see that a grave was prepared for her body. The telegraph company, though a corporation, is governed by the knowledge of its agents; whether these agents knew what nature would prompt this bereaved father to do in case he had heard the dreadful tidings intended to be carried to him by the telegram in question, does not matter. (d) the complaint does show how the wicked, wanton or wilful disregard by the defendant of the duty it owed to plaintiff damaged the plaintiff.

3. Grounds of appeal: (a) It matters not that the plaintiff in his complaint set out the telegram. It was but the inducement leading up to the alleged malicious, wanton or wilful disregard of the duty it owed the plaintiff. This matter is settled against the defendant by *Pickens* v. *R. R. Co., supra.* (b) Since the last act of the General Assembly passed in 1898, great liberality must be shown by Judges in regard to actions claiming examplary damages. See the provisions of the act of 1898, found in 22 Stat. at Large, p. 693, which provides: "That in all actions *ex delicto,* in which vindictive, punitive or examplary damages are claimed in the complaint, it shall be proper for the party to recover also his actual damages sustained; and no party shall be required to make any separate statement in the complaint in such action, nor shall any party be required to elect whether he will go to trial for actual or other damages, but shall be entitled to submit his whole case to the jury under the instruction of the Court." But, apart from this, we may not hold that a party plaintiff must in his complaint for examplary damages set forth any actual damages *ex nomine.* (c) The complaint does point out his injury. (d) The complaint does point a duty defendant owed plaintiff. (e) We have already overruled this position and given our reasons hereinbefore therefor. We have thus considered all of defendant's exceptions and have overruled the same.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed and that the action be remitted to that Court for a trial.

MR. JUSTICE GARY, *concurring.* The complaint alleges that the message was presented to and received by the defendant to be transmitted and delivered to H. F. Jumper for the plaintiff's benefit. Under these allegations, the plaintiff, as the party beneficially interested, occupied a contractual relation with the defendant. Jumper was the medium through which the message was to reach the plaintiff. The complaint alleges that the contract was broken by the defendant in such a manner as to constitute a tort; and as he was the party sustaining damage, we fail to see why he should not have redress for the alleged wrongful violation of the contract.

I, therefore, concur in the judgment announced in the opinion of Mr. Justice Pope.

MR. JUSTICE JONES *concurs in the result.*

MR. CHIEF JUSTICE McIVER, *dissenting.* The delay which has already occurred in filing this opinion (for which it is but a simple act of justice to the other members of the Court to say I, alone, am responsible, owing to an unfortunate combination of circumstances which it is needless to state here) has been such as to forbid any further delay by undertaking to indicate at any length the conclusions which I have reached. I must, therefore, content myself with a simple statement of some of the reasons, without elaboration, why I am unable to concur in the conclusions reached by Mr. Justice Pope in his opinion. Inasmuch as the complaint, as well as the demurrer thereto, have been fully set out in that opinion, it is unnecessary to do more here than to state, briefly, the grounds upon which, I think, the demurrer should have been sustained.

1st. It does not seem to me that the facts stated in the complaint, which, of course, for the purposes of this inquiry, must be taken to be true, are sufficient to constitute a cause of action in favor of the plaintiff against the defendant company, for the following reasons: (a) I do not see that the

facts there set forth show that there was any contractual relation between the plaintiff and the defendant. While such facts may be sufficient to show such a relation between the sender of the message—J. B. Spivey—and the telegraph company, or possibly between the person to whom the message was addressed—H. F. Jumper—and the telegraph company, yet I am unable to perceive how the facts can give rise to any contract relation between the plaintiff—a third person—and the telegraph company. There is no allegation that either Jumper or Spivey was acting as the agent of the plaintiff in the transaction narrated in the complaint. The fact that the message "was presented to and received by the defendant to be transmitted and delivered, as aforesaid, for the plaintiff's benefit, of all of which defendant was apprised at the time of the presentation of said message to it," does not show, or even imply, that defendant was asked to assume, or did assume, the obligation to deliver the message to the plaintiff. On the contrary, it plainly implies that it was not intended or expected that the defendant should assume any such obligation. Hence, if plaintiff sustained any damage by reason of the failure of the plaintiff to receive such message in due time, the defendant cannot be held liable to the plaintiff for such damages. (b) I am unable to perceive that the facts stated in the complaint are such as would give rise to any other relation between the plaintiff and defendant, which would give the plaintiff any right of action against the defendant in case the plaintiff failed to receive such message in due time, for those facts do not show that the defendant owed any duty *to the plaintiff* to deliver *to him* such message in time; and, on the contrary, those facts plainly imply that the duty of delivering the message *to the plaintiff,* if imposed upon any one, it was imposed upon Jumper and not upon the defendant. Hence, if the action should be regarded as an action *ex delicto,* the facts alleged do not show any tort of which *the plaintiff* has any legal cause of complaint, *as against the defendant.* For if the defendant owed no duty *to the plaintiff* there could be no

breach of such duty—no tort.   The fact alluded to above, that the defendant was apprised of the fact that the message was intended for the plaintiff's benefit, could not affect this view of the case for in the absence of any allegation that the defendant assumed the duty of delivering the message *promptly to the plaintiff,* and that duty was assumed by Jumper, the defendant certainly could not be held liable for his tort in not performing that duty; for, it will be observed that there is no allegation in the complaint that Jumper would have performed his duty of delivering the message to the plaintiff, if the defendant had delivered the message to him (Jumper) in due time—even if such an allegation would have helped the matter.   In this aspect of the case, the fact that defendant was notified that the message was intended for the plaintiff's benefit, would not avail the plaintiff; for, legally speaking, "no tort can be for the benefit of another," as it is well expressed in the argument of one of the counsel for the appellant.   So that whether the action be regarded as an action *ex contractu* or an action *ex delicto,* I do not think the facts stated in the complaint are sufficient to constitute a cause of action in *favor of the plaintiff,* as against the defendant.

In the second place, it seems to me that the action must be regarded as an action *ex contractu,* and if, as it seems to be conceded, and necessarily conceded, as there is no allegation of any actual damages, outside of injured feelings, the action is for the recovery—not of compensatory damages—but for punitive or examplary damages.   I do not think such damages can be recovered in an action *ex contractu.*

In the third place, the default alleged to have been committed by the defendant cannot be regarded as the proximate cause of the injury complained of by the plaintiff; for it may have occurred from an intervening efficient and proximate cause, the neglect of Jumper to deliver the message to the plaintiff in due time, even if there had been no default on the part of the defendant; whether such neglect would have occurred, is a matter of conjecture only.