### MIMS v. SEABOARD AIR LINE RY.

1. NONSUIT—PASSENGER.—There being evidence as to an implied contract on part of defendant to carry plaintiff to a certain point on a ticket for which defendant was to receive pay from a third party, nonsuit made on ground that no contract of carriage was proven, was properly overruled.
2. IBID.—PASSENGER.—In an action based on tort for wilful failure to carry a passenger, defendant is not entitled to nonsuit on failure of plaintiff to prove contract of carriage.

Before FRANK B. GARY, special J., Lexington, November, 1903. Affirmed.

Action by Allen Mims against Seaboard Air Line Ry. From judgment for plaintiff, defendant appeals.

*Messrs. Lyles & McMahan* and *Efird & Dreher,* for appellant.

*Messrs. G. T. Graham* and *A. D. Martin,* contra, cite: *There being evidence to show that defendant had accepted another as pay for tickets for plaintiff, contract of carriage was made out:* 40 S. E., 164; 1 Rich., 268; 8 Rich., 416; 9 Cyc., 316. *Defendant would be liable for tort in absence of contract:* 35 S. E., 583; 31 S. E., 212; 40 S. E., 164; 26 Ency., 73; 68 S. C., 89. *Party acting as agent for another is liable, if he does not disclose principal:* 1 Ency., 2 ed., 1123; 2 McC., 199; 4 McC., 392.

July 1, 1904. The opinion of the Court was delivered by

Mr. Justice Gary. The exceptions assign error on the part of his Honor, the presiding Judge: 1. In refusing to grant a nonsuit; 2, in refusing to direct a verdict; and 3, in refusing to grant a new trial. In considering the questions presented by the exceptions, it will be necessary to refer to the third, fourth and fifth paragraphs of the complaint, which are as follows:

"3. That on the 26th day of September, 1902, the defendant, through its agent, C. B. Ryan, with intent to injure plaintiff, negligently, recklessly, wantonly and wilfully telegraphed its station agent at Swansea, in the county of Lexington, and State aforesaid, and instructed him and directed him to deliver to plaintiff three tickets to Savannah, Ga., and directed its said agent at Swansea to instruct plaintiff to call upon the union depot or station agent in the city of Savannah, Ga., upon his arrival there, for three tickets from said city of Savannah, Ga., to Citronelle, Fla., and that said tickets would be forthwith delivered to him upon demand, and that plaintiff would be conveyed from Savannah, Ga., to

Citronelle, Fla., at which last named place plaintiff had a position that would have paid him twenty-five dollars per month, of which defendant had knowledge and notice.

"4. That upon receipt of said telegram and instructions from C. B. Ryan, who was the agent and servant of the defendant, and acting within the scope of his authority as such agent, the station agent of the defendant at Swansea aforesaid, on or about the 30th of September, 1902, delivered to plaintiff three tickets from Swansea aforesaid to Savannah, Ga., and directed him to call on the union depot agent or station agent in Savannah, Ga., upon his arrival there, and then and there assured plaintiff that said union depot or station agent would immediately upon demand deliver to plaintiff three tickets to Citronelle, Fla., and that he would be safely conveyed to Citronelle, Fla., aforesaid; and acting upon the representations so made to him by the agents and servants of the defendant as aforesaid, and believing said statements were true, and that said tickets would be delivered to him by the union depot or station agent in the city of Savannah, Ga., upon demand, as he had been assured they would be, and that he would be conveyed to Citronelle, Fla., as defendant's agent and servants assured him that he would be, plaintiff, in company with another person, boarded one of defendant's passenger trains at Swansea aforesaid, and was conveyed to Savannah, Ga.

"5. That upon his arrival in Savannah, Ga., on or about the 30th day of September, 1902, plaintiff applied to the union depot or union ticket agent at Savannah, Ga., for tickets to said Citronelle, Fla., and demanded that said tickets be forthwith delivered to him, and then and there informed said agent that the station agent at Swansea had directed plaintiff to call upon him for tickets to Citronelle, Fla., and had assured him that he, the said union depot or station agent would deliver said tickets to him to Citronelle, Fla., aforesaid, upon demand, and at the same time exhibiting to him the telegram of the said C. B. Ryan to the said station agent at Swansea, in regard to said matter; and

although plaintiff insisted upon the delivery of said tickets to him, and actually made the same demand on other agents of the defendant in said city of Savannah, Ga.; but regardless of its solemn promise and agreement, and regardless of its duty, and in utter disregard of the rights of the plaintiff, the defendant, its agents and servants, negligently, recklessly, wantonly and wilfully refused to deliver said tickets, or any or either of them, to plaintiff, and refused to convey, or have plaintiff conveyed, to Citronelle, Fla., aforesaid."

The defendant denied the material allegations of the complaint, and alleged the following facts:

"That on or about the 25th day of September, 1902, the defendant's general passenger agent received a request from an officer of the Atlantic Coast Line Railroad that he instruct the Seaboard's agent at Swansea to furnish three tickets to Mims from Swansea to Savannah, Ga., with instructions to Mims from said Atlantic Coast Line Railroad to call on the depot ticket agent of the Atlantic Coast Line Railroad at Savannah for three tickets over the said Atlantic Coast Line Railroad from Savannah, Ga., to Citronelle, Fla. That the instructions were given to the defendant's agent at Swansea, and the three tickets were thereafter furnished to the said Mims, the plaintiff herein, and the instructions from the Atlantic Coast Line Railroad were given to him, and the said Atlantic Coast Line Railroad thereafter paid the defendant for said tickets so furnished and used from Swansea, S. C., to Savannah, Ga."

The jury rendered a verdict in favor of the plaintiff for $300.

The defendant appealed upon the following exceptions:

"1. Because his Honor, the presiding Judge, erred in refusing to grant defendant's motion for a nonsuit made on the grounds: (1) That the contract alleged by the plaintiff to have been made by the defendant to transport him from Savannah, Ga., to Citronelle, Fla., if made as alleged, was *nudum pactum;* a mere gratuity on the part of the defendant; and (2) that there was not a *scintilla* of evidence tending to

show that defendant ever contracted to transport the plaintiff from Savannah, Ga., to Citronelle, Fla., or failed to do anything that it had promised to do for the plaintiff. The error consisted in this, that his Honor held that there was evidence to go to the jury, when there was none.

"2. Because his Honor, the presiding Judge, refused to direct a verdict for defendant upon defendant's motion, upon the ground that the evidence showed that defendant had made no contract to carry plaintiff from Savannah to Citronelle, and had performed its only contract made with or for plaintiff, and that the injury to plaintiff was caused by the negligence of the Atlantic Coast Line Railroad. The error consisted in his holding that there was evidence to go to the jury, when there was none.

"3. Because his Honor, the presiding Judge, refused defendant's motion for a new trial, made on the grounds that the evidence showed that defendant made no contract to transport plaintiff from Savannah, Ga., to Citronelle, Fla., and that it performed its contract, which was made with the Atlantic Coast Line Railroad, and which was to carry plaintiff from Swansea to Savannah, and that the testimony showed that plaintiff's cause of action was against the Atlantic Coast Line Railroad, and not against defendant. The error consisted in holding that there was evidence to sustain the verdict against defendant."

The motion for nonsuit was made on two grounds: 1. That there was no evidence of a *contract* between the plaintiff and the defendant; 2, that if there was evidence of such contract, it was without consideration. It is true, there was no evidence of a contract between the plaintiff and the defendant *in express terms,* but there was testimony that tickets were paid for, to be used by the plaintiff from Swansea to Citronelle. There was testimony from which the jury might have found that there was an *implied* agreement on the part of the defendant to transport the plaintiff to Citronelle, in consideration of the payment of the money for the tickets to that station, even though such pay-

ment was made by a third person for his benefit. *Butler* v. *Tel. Co.*, 62 S. C., 222, 40 S. E., 162.

There is another reason why the motion for a nonsuit was properly refused. It would seem from the case of *Pickens* v. *R. R.*, 54 S. C., 502, 32 S. E., 567, that the plaintiff founds his right of recovery solely upon a tort and not upon a breach of contract. In that case, the Court quotes with approval the following language from *Hammond* v. *R. R.*, 6 S. C., 130: "We do not see in the complaint any allegation on which the respondent founds his right of recovery for the breach of contract. It is not referred to as the foundation of his action. It may be that his complaint would not have been open to any exception, if he had omitted all reference to it. It was introduced to show he was not an intruder on the train of the company. It was merely preliminary to his real cause of action, and, if necessary to its support, he could have offered proof of it, without setting it out in his complaint."

At any rate, the allegations of the complaint are appropriate to an action based upon tort, and in such a case, the defendant is not entitled to a nonsuit on the ground that there was no contract between the parties to the action. *Cartin* v. *R. R.*, 43 S. C., 221, 20 S. E., 979.

These views dispose of all the exceptions.

Judgment affirmed.

MR. JUSTICE WOODS, *concurring*. Evidence was offered in support of this action tending to establish the following facts: The plaintiff, Allen Mims, a colored man, was at one time employed as a laborer on a turpentine farm at Citronelle, Fla., but had returned to his home at Swansea, S. C. The plaintiff having agreed with his former employer to go back to Florida and work for him, the latter contracted with the agent of the Atlantic Coast Line Railroad Company at Citronelle, Fla., to furnish the plaintiff transportation to that point. The Atlantic Coast Line arranged with the defendant, Seaboard Air Line Railway, for that company to furnish

tickets to plaintiff from Swansea to Savannah, with instructions to him to call at union ticket office, Savannah, for tickets to Citronelle, over Atlantic Coast Line. The agent of the Seaboard Air Line accordingly furnished plaintiff a ticket from Swansea to Savannah, telling him that tickets would be furnished him from Savannah to Citronelle, on presenting at the union ticket office in Savannah the following telegram from the general passenger agent of the Seaboard Air Line, which was given to him:

"J. E. Gant, Agent, Swansea, S. C. Furnish Allen Mims (3) tickets Swansea to Savannah. Instruct him to call on union depot agent for (3) three tickets to Citronelle, Florida. C. B. Ryan."

The plaintiff did present the telegram, but was refused transportation to Citronelle, owing to the failure of the general passenger agent of the Atlantic Coast Line to instruct the ticket agent in Savannah to furnish the ticket over its line to Citronelle. The plaintiff was without money, and had to walk back to Swansea, and suffered considerable hardship on the journey. The Seaboard Air Line received no compensation for transportation beyond Savannah. There was no testimony that the plaintiff knew anything whatever of the arrangement between the two railroads, or that he was not dealing altogether with the Seaboard Air Line. He took passage to Savannah at the instance of the agent of the Seaboard Air Line, relying on his assurance that transportation for the entire journey to Citronelle, had been arranged by his employer in Florida, who had paid for it, or would do so. If these statements are true, the Seaboard Air Line bound itself to furnish plaintiff, as a passenger, transportation to Citronelle upon condition that he should, on reaching Savannah, present the telegram to the union ticket office. In such circumstances, when transportation was refused at Savannah, he could not be referred for redress to the Atlantic Coast Line, of whose connection with the undertaking to convey him to Citronelle, he had no notice. If the Seaboard Air Line acted as agent of the At-

lanticv Coast Line, to discharge itself from liability, it should have disclosed its principal.

There was evidence, therefore, to go to the jury and to support the verdict, and it would have been error to grant a nonsuit or direct a verdict for the defendant.

I concur in the conclusion that the judgment should be affirmed.