13108

JOHNSON v. AMERICAN RAILWAY EXPRESS CO.

(161 S. E., 478.)

*Mr. Phillip H. Arrowsmith,.* for appellant,

*Messrs. Blair Foster* and *Willcox & Hardee,* for respondent,

December 1, 1931.

Per Curiam.

Upon consideration of the petition of the appellant in this cause, it is ordered that the opinion filed herein on April 1, 1931, be withdrawn; that the following opinion be substituted for the same; and that the petition for rehearing be dismissed.

This is an action by the plaintiff, formerly an employee as an express messenger, of the defendant company, for

damages resulting as alleged, from his wrongful discharge. The ground of his complaint is that he was discharged without just cause or excuse, and in violation of the provisions of an agreement entered into between the company and the union of express messengers, of which the plaintiff was a member, guaranteeing to an employee, before his discharge, an investigation of the grounds of complaint against him. Issues being joined, the case was tried at the November, 1928, term of said Court before his Honor, Judge T. S. Sease, and a jury. At the conclusion of the testimony offered on behalf of the plaintiff, the defendant made a motion for a nonsuit upon grounds hereinafter referred to, which motion his Honor granted, and, after granting defendant's motion for a nonsuit, his Honor directed a verdict for the plaintiff for nominal damages in the sum of $8 from all of which (according to the agreed statement contained in the transcript of record) this appeal is taken by the plaintiff.

From the testimony of the plaintiff, which for the purpose of this appeal is to be taken as true, the following facts appear:

The plaintiff had been in the employment of the defendant as an express messenger on trains since February, 1924, upon an indefinite term of service. On June 23, 1927, he was on his run from Florence to Washington; when the train arrived at Richmond, about 8:30 p. m., he was met by one McConnell, route agent of the defendant, taken off of his run and carried to a hotel where he met·two special agents, Smith and Hughes, and the superintendent, May, in a room of the hotel; after an interview lasting about two hours, the conference broke up without any definite communication to the plaintiff; he was furnished with transportation back to Florence where he was again met by McConnell who informed him that he would be notified later in the day the conclusion reached as to his case; in the evening he was called to the hotel by McConnell and told that the company requested his resignation; the plaintiff did not comply

with the suggestion and was told by McConnell to come down to the office the next day and he would have a voucher fixed up and pay him off; the plaintiff went; McConnell had a voucher fixed up for his time up to the time he reached Richmond, but not for the deadhead time from Richmond back to Florence. The ground of complaint against the plaintiff, which he learned after his discharge, was not reporting a messenger seen by him to be handling liquor, supposed to have been abstracted from a shipment, in violation of a stipulation admitted by the plaintiff to have been signed by him: "Q. Will you aid in ridding the service of employees whose honesty is in the least questionable? A. Yes, sir."

On June 28, 1927, the plaintiff wrote to McConnell, route agent, asking for a statement of the grounds of his suspension from service, to which he had no reply.

On June 29, 1927, the plaintiff wrote to the superintendent, May, asking for an investigation of the charges against him. No reply was received thereto until August 5, 1927, after the present action had been begun on July 26th, offering an investigation. The plaintiff was out of employment for six weeks, and thereafter has not earned more than $100.00 per month, about half of his wages as messenger.

Rule 29 of the agreement between the company and the employees thereof represented by the American Federation of Express Workers, is as follows: "An employee who has been in the service for more than ninety days or whose application has been formerly approved shall not be disciplined or dismissed without investigation, at which investigation he may be represented by an employee of his choice or one representative (as per rule 84) of an organization of which he may be a member. He may, however, be held out of the service pending such investigation. He shall have at least twenty-four hours advance notice of such investigation, which shall be held within seven days of the date when charged with the offense or held from service. A decision

will be rendered within seven days after completion of investigation."

Rule 37 provides: "If the final decision decrees that charges against the employee were not sustained, the record shall be cleared of the charge; if suspended or dismissed, the employee shall be reinstated and paid for the time lost."

The defendant's motion for a nonsuit was based on the following grounds:

"1. There is no testimony to the effect that the plaintiff was employed for any specified period of time and the only reasonable inference from the testimony is that the contract was terminable at the will of either party and the plaintiff under such circumstances is not entitled to recover because there is no breach of contract which would give rise to an action for damages.

"2. All of the testimony shows that the plaintiff's term of employment was indefinite and the plaintiff cannot maintain an action in tort for a wrongful discharge from employment because such a discharge becomes the basis of an action in tort only when accompanied by a wrongful act which amounts to a trespass with actual or constructive force. A malicious notice disconnected with the infringement of a legal right, even if there were evidence in this case to disclose it, cannot be the subject of a civil action, and there is no testimony to the effect that any trespass was committed or force used in the discharge of the plaintiff.

"3. The working rules of the defendant formed no part of his contract of employment but are incidents thereof and even if there is testimony to the effect that plaintiff was not accorded a hearing provided for in said rules they constitute the sole and exclusive remedies available to the plaintiff, and in addition it appears from the testimony that the plaintiff had not exhausted his remedies under said rules in that he has made no appeal to the final authority of the defendant to whom he has the right to appeal.

"4. And further, because the record will show that he has not exhausted his remedies, because, after the suit was brought the defendant offered him the hearing asked for."

His Honor, Judge Sease, made the following ruling on this motion:

"This argument has been very thorough on both sides. While I cannot commend the position taken by the defendant in requiring Johnson to spy on his fellow-employees, that is requiring an Anglo-Saxon to do something he don't want to do, especially in regard to having two quarts of liquor, and if there had been a definite employment and the evidence would be like it is from Johnson, I would certainly let that go to the jury, because, if it had been a definite employment, I don't think that defense a reason to discharge a man. But, under the law, this contract is not unilateral. It is binding on both parties. One has a right to terminate it at any time he sees fit and so does the other. If the testimony did show that they deprived him of a right to appeal or right to a full investigation, there is no damage shown as resulting from that deprivation of right to appeal and investigation. It is intimated by plaintiff himself, if they had allowed an investigation they would not have re-instated him, and I agree with him. It is what is known as *damnum absque injuria*—a damage without a remedy, or it is a wrong without damage, if anything like that is possible, with the basis of the Anglo-Saxon principle that wherever there is a wrong there is a remedy—that means a legal wrong. Wherever there is a legal wrong there is a remedy. There has been no legal wrong inflicted upon plaintiff by refusing him the privilege of an appeal or full investigation. I cannot see that there is any evidence of fraud—every breach of contract is a willful and intentional act. A man has a right to intentionally break a contract and take the consequences for the damage directly flowing from such breach of contract. As that distinguished Supreme Court Justice, Judge Hydrick, held in the case in which he corrected himself, it is a differ-

ence between an act with intent to commit a fraud and actual fraud. There is no testimony of actual fraud committed upon plaintiff so as to entitle him to recover punitive damages.

"If plaintiff desires, the Court will allow him to take judgment for the time between the time he was sent back and the twenty-four hours. He stated that they did not pay him, and the rules required that his employment did not terminate until twenty-four hours after that—or something like that. If the plaintiff does not take advantage of that, I have no objection.

"The motion for non-suit, under the law, will have to be granted. I cannot get around the *Gantt case,* 125 S. C., 518, 118 S. E., 920. The *Gantt case* is on all fours with this one."

Thereafter, immediately upon the granting of the nonsuit, the following occurred:

"Mr. Arrowsmith: We do not want to waive our position, but we would like for your Honor to instruct the jury to find that much for the plaintiff.

"The Court: You waive none of your rights by taking the suggestion of the Court. I would not prejudice you for anything. None of your rights will be waived by acceptance of the verdict."

I. M. Johnson, recalled.

"Q. From Richmond to Florence would be how much? A. Would be about seven or eight dollars.

"The Court: Gentlemen, write a verdict for $8.00 for plaintiff."

It has been suggested that a formal order of nonsuit was not entered. Whether a formal order as to the nonsuit granted was actually signed by the trial Judge is immaterial, for it clearly appears from the record that such order was directed and granted, based on the grounds stated in defendant's motion, and the parties acted upon the same.

As stated by Judge Sease in granting defendant's motion for a nonsuit, his Honor based his holding upon the principle

announced in the case of *Gantt v. Railway,* 125 S. C., 518, 118 S. E., 920, 921, which holds, in effect, that where the employment is for an indefinite period, each party having the right to terminate it at his pleasure, the employee discharged has no right under the contract referred to, between the union and the company, to an investigation, as provided for therein. Permission was granted the appellant to review the *Gantt case.*

There are certain distinguishing features between the *Gantt case* and the case at bar; the result of the decision in the *Gantt case* may have been right; but it very clearly appears, that under circumstances quite similar to those here presented, the proposition above stated as the ground of nonsuit in the case at bar, was distinctly announced. In the *Gantt case,* the motion for nonsuit was made upon several grounds, but the Court declared "only one of which need be considered," namely: "That the testimony in the case is that the contract was an indefinite contract of hire; there was nothing definite said as to how long he would remain in the employ of the railroad, or when he could be discharged; that that makes a hiring at will and that either party may terminate at any time, with or without cause."

Upon that ground alone the nonsuit was sustained.

There is no doubt of the correctness of the general proposition that if an employment is for an indefinite term, and each party may terminate it at his pleasure, the discharge even without cause will afford the employee no ground of complaint.

While the term of service of the plaintiff was clearly indefinite, it apears that the clause in the agreement between the union and the express company had the effect of limiting the indefiniteness of the term and the consequent right of the company to discharge an employee, with or without cause, by providing, in effect, that the company could not discharge an employee without cause, at all, and that it could not discharge one with cause until an in-

vestigation establishing the alleged charge against him had been formally made after due notice to the employee and an opportunity to appear personally and with a representative. We think that this view is sustained by the further provision in the agreement that if the charge should not be sustained the employee should be restored to his position (quoted above).

The question then is to be decided, not upon the issue whether the term was definite or indefinite, but whether an employee who is a member of the union is in a position to enforce the provisions of 'an agreement entered into between the carrier and the union, to which he was not a party, but which plainly was made for his benefit.

It has been held by this Court in numerous cases that where a contract is made between two persons, and there is in it a provision that enures to the benefit of a third person not a party to the contract, and perhaps ignorant of its execution, he acquires an enforceable interest in the contract so far as the provision of his interest is concerned. *Mack Mfg. Co. v. Massachusetts, etc., Co.,* 103 S. C., 55, 87 S. E., 439; *Walker v. Ins. Co.,* 136 S. C., 144, 134 S. E., 263, 52 A. L. R., 259; *Ancrum v. Water Co.,* 82 S. C., 284, 64 S. E., 151, 21 L. R. A. (N. S.), 1029; *Brown v. O'Brien,* 1 Rich., 270, 44 Am. Dec., 254; *Duncan v. Moon,* Dud., 332; *General M. Acceptance Corp. v. Hutto,* 136 S. C., 207, 134 S. E., 232; *Thompson v. Gordon,* 3 Strob., 196; *Thomas v. Atkinson,* 94 S. C., 125, 77 S. E., 722; *Harris v. R. Co.,* 31 S. C., 87, 9 S. E., 690, 2 Corp. J., 86; *Butler v. Telephone Co.,* 62 S. C., 222, 40 S. E., 162, 89 Am. St. Rep., 893; *Mims v. R. Co.,* 69 S. C., 338, 48 S. E., 269; *Standard Oil Co., v. Powell Pav. & Contracting Co.,* 139 S. C., 411, 138 S. E., 184; *Crum v. Jenkins,* 145 S. C., 177, 143 S. E., 21.

So that the question in its final analysis turns upon the issue whether an agreement between the employer and the union, of which the employee is a member,

which purports to confer certain rights upon the members relating to rates or pay, or conditions of work, is a legal valid contract; for it is plain that if the contract be legal and valid, and secures a benefit to the members, each would be entitled to enforce such benefit.

No legal objection to the legality or validity of such an agreement has been urged by the employer or has occurred to the Court. On the contrary, in the present case, it has been signed by the employer, promulgated and acted upon by it; it must be assumed that it was known to the employees and was an inducement to them to enter or continue in the service; the employer would be estopped to deny its binding force.

As a matter of public policy, to ensure a friendly spirit between capital and labor, which in these days is severely strained, it should be sustained. Its fairness and reasonableness must appeal to every one; it concedes no more than a fair-minded corporation would not only allow but insist upon, and no less than an honest laborer is entitled to.

In *Texas & N. O. R. Co. v. Brotherhood,* 281 U. S., 548, 50 S. Ct., 427, 434, 74 L. Ed., 1034, the Supreme Court of the United States said in an opinion filed May 26, 1930: "It has long been recognized that employees are entitled to organize for the purpose of securing the redress of grievances and to promote agreements with employers relating to rates of pay and conditions of work. *American Steel Foundries v. Tri-City Cent. Trades Counsel,* 257 U. S., 184, 209, 66 L. Ed., 189, 199, 27 A. L. R., 360, 42 S. Ct., 72. Congress was not required to ignore this right of the employees but could safeguard it and seek to make their appropriate collective action an instrument of peace rather than of strife."

In the case of *Gary v. R. Co.,* 37 Ga. App., 744, 141 S. E., 819, 821, the Court said: "If the contract of employment had contained no provision as to when or how it might be terminated, the defendant might have discharged the plain-

tiff at will; but since, under specific stipulations, the relation could be severed only in a particular way or on the happening of a certain event, the act of the defendant in dismissing the plaintiff without a compliance with these conditions would constitute a breach of the contract. * * * The clear intent and purpose of the agreement was that the plaintiff could only be dismissed after a hearing which involved the question of the right of the defendant to dismiss him upon some ground."

In *Crotty v. R. Co.,* 149 App. Div., 262, 133 N. Y. S., 696, 697, the petition alleged: "That in and by the terms of said employment it was provided that plaintiff, as such yardman, would not be suspended (except suspension pending investigation), discharged or have record entered against him without a hearing and full investigation, which would be given promptly; that he might have present, during such investigation, any actual witnesses of the occurrence under investigation, except discharged employees, and when found blameless, would receive full pay for the time lost."

The Court held: "In effect, therefore, the contract provided that the term of plaintiff's hiring should continue until he had been given a hearing and full investigation, with the right to call witnesses of the occurrence under investigation."

It must be conceded that other Courts have reached the conclusion that such a stipulation cannot be enforced by the beneficiary employee, unless he has expressely ratified the agreement between the union and the employer. We are not disposed to follow them, in view of our decisions hereinbefore cited. Among the contrary authorities are these: *Hudson v. R. Co.,* 152 Ky., 711, 154 S. W., 47, 45 L. R. A. (N. S.), 184 Ann. Cas., 1915B, 98; *Burnetta v. Marceline Coal Co.,* 180 Mo., 241, 79 S. W., 136, 24 Cyc., 824, 16 R. C. L., 425; *West v. R. Co.,* 103 W. Va., 417, 137 S. E., 654. Cyc. and R. C. L. both rely upon the *Hudson* and *Burnetta cases,* and the *West case* upon all four authorities.

As to the suggestion that the matter may be controlled by the provisions of the Railway Labor Act, 45 USCA, title Railroads, section 151, *et seq.*, we deem it sufficient to state that question is not raised in this appeal. It was not made a ground for a nonsuit, and his Honor, the trial Judge, in no way considered the same.

It therefore follows, that so far as the *Gantt case* is irreconcilable with the views herein expressed and conclusions announced, it can no longer be considered authoritative; and it further follows that, under the testimony in this case, his Honor, the trial Judge, was in error in granting the defendant's motion for a nonsuit.

Regarding the contention of the respondent, that the direction of a verdict by the trial Judge for the plaintiff in the sum of $8.00 precludes him from presenting his grounds of appeal to this Court, we are unable to agree with this proposition. As stated above, this verdict for $8.00 for the plaintiff was directed by the trial Judge on his own motion, and after announcing that the defendant's motion for a nonsuit had to be granted. For the purpose of clarifying the situation, we repeat here what transpired after his Honor announced his ruling on the defendant's motion for a nonsuit, to wit:

"If plaintiff desires, the Court will allow him to take judgment for the time between the time he was sent back and the twenty-four hours. He stated that they did not pay him, and the rules required that his employment does not terminate until twenty-four hours after that—or something like that. If the plaintiff does not take advantage of that, I have no objection.

"The motion for non-suit, under the law, will have to be granted. I cannot get around the *Gantt case*. The *Gantt case* is on all fours with this one.

"Mr. Arrowsmith: We do not want to waive our position, but we would like for your Honor to instruct the jury to find that much for the plaintiff.

"The Court: You waive none of your rights by taking the suggestion of the Court. I would not prejudice you for anything. None of your rights will be waived by acceptance of the verdict."

I. M. Johnson, recalled.

"Q. From Richmond to Florence would be how much? A. Would be about seven or eight dollars.

"The Court: Gentlemen, write a verdict for $8.00 for plaintiff."

The verdict of $8.00, directed by the Court, had nothing to do with the causes of action based on plaintiff being discharged. It was clearly an afterthought of the trial Judge, and had no connection with the granting of the nonsuit. Under the issues raised by the pleadings, the plaintiff was not entitled to this verdict; but since it was directed by the trial Judge, at his Honor's suggestion, with a statement by his Honor to the effect that the plaintiff waived none of his rights, and the defendant interposed no objection, it should not now preclude the plaintiff from having the benefit of his appeal from the granting of defendant's motion for a nonsuit, and such act could not have the effect of destroying the nonsuit granted by the trial Judge, from which the plaintiff has appealed. It having been made to appear from the testimony, given in the course of the trial, that the plaintiff had not been paid in full for the time he was in the employment of the defendant, the trial Judge no doubt felt that he should receive such pay, although that issue was not raised in the pleadings and had no connection with the causes of action alleged; the causes of action alleged in the complaint being based on a breach of contract, whereas the item for $8.00 suggested by the trial Judge was founded on contract. In this connection, we call attention to the fact that there is no appeal by either party from a judgment, and, so far as the record discloses, no judgment was entered on the verdict in question. According to the agreed statement contained in the transcript of record, the

plaintiff has appealed not only from the granting of the non-suit by the trial Judge, but also from the verdict directed, and gave notice of waiving such verdict. It is not necessary for us to consider the effect of this notice of waiver. In our opinion, what transpired in the Court below regarding the verdict in question had no bearing on the nonsuit granted, and should in no way affect the plaintiff's appeal to this Court from the granting of said nonsuit by the lower Court.

It is the judgment of this Court that the appellant's exceptions imputing error to the trial Judge in granting and ordering a nonsuit be, and the same is hereby, sustained, and the case remanded to the lower Court for a new trial.

It is further ordered that the remittitur in this case be held for the usual ten days after the filing of this order.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and CARTER concur.

MR. JUSTICE COTHRAN did not participate on account of illness.