## 10377

### McDOWELL v. SOUTHERN RAILWAY COMPANY.

(102 S. E. 639.)

1. MASTER AND SERVANT—ASSUMPTION OF RISK OF INJURY FROM CONTACT WITH HIDDEN BARBED WIRE. HELD FOR JURY.—Where the testimony tended to show that it was necessary for railroad bridge hands engaged in tearing down a bridge to run to the place where plaintiff was injured in order to prevent the cap of a bent from falling on them, and that danger arising from a barbed wire was hidden, it was a question for the jury whether plaintiff assumed the risk.

2. MASTER AND SERVANT—MASTER'S LACK OF KNOWLEDGE OF HIDDEN DANGER A MATTER OF DEFENSE.—The fact that employer may not have had notice of the hidden danger arising from a concealed barbed wire is a matter of defense, and no part of injured employee's cause of action.

3. MASTER AND SERVANT—FELLOW SERVANT DOCTRINE INAPPLICABLE IN CASE UNDER FEDERAL ACT.—The fellow servant doctrine has no appli cation to a case arising under the Federal Employers' Liability A·· (U. S. Comp. St., secs. 8657-8665).

4. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE AVAILABLE ONLY IN MITIGATION OF DAMAGES UNDER FEDERAL ACT.—In a case arising under the Federal Employers' Liability Act (U. S. Comp. St., secs. 8657-8665), the defense of contributory negligence is not available, except in mitigation of damages.

5. RELEASE—RETURN OF CONSIDERATION HELD NOT NECESSARY TO AVOIDANCE.—A defendant in a personal injury suit, who pleads a release as a defense, has right to make motion requiring plaintiff to file a reply stating whether consideration was returned; but, where defend ant does not make such motion, plaintiff has the right to offer evi dence in avoidance of release, and cannot be nonsuited for failure to return the consideration.

Before Memminger, J., Cherokee, Spring term, 1919. Reversed.

Action by Gilmore McDowell against the Southern Railway Company. Order of nonsuit, and plaintiff appeals.

*Mr. N. W. Hardin,* for appellant, submits: *The defendant is liable if the injury was caused by the negligence of the servants of defendant or by defective appliances, etc.:* Federal Employers' Liability Act, sec. 1. *A servant does not assume the risk of injuries occasioned by the master's negligence, neither is contributory negligence available to defendant except to reduce the amount of damages:* Federal Employers' Liability Act, sections 3 and 4; 98 S. C. 348; 223 U. S. 34; 56 L. Ed. 327; 98 S. C. 125. *The risk, if hidden, was not part of the contract of service:* 107 S. C. 3; 99 S. C. 100. *A master is liable for injuries to his servant resulting from defects in the place to work of which he the master) would have known had he exercised due diligence as well as from those which he actually did know:* 99 S. C. 231. *Where a servant is injured in an effort to escape greater danger caused either by defective machinery or by servants of the master, the latter is liable:* 75 S. C. 173; 13 Pet. 193. *The law imputes to the master knowledge of latent danger in his instrumentalities and casts upon him the burden of showing that he could not have discovered the danger by the exercise of due diligence:* 93 S. C. 395. *The greater danger, the greater care required:* 110 S. C. 567. *A nonsuit should not be granted where there is no positive or direct testimony tending to establish the allegations of negligence, if there are facts and circumstances in evidence from which the jury may infer that some of the alleged acts were committed:* 86 S. C. 300. *A nonsuit cannot be granted where there is any evidence offered by plaintiff to prove his case:* 97 S. C. 403; 97 S. C. 331.

*Mr. Harry DePass,* for respondent, submits: *Where nothing more is shown that an appliance broke or failed to work,*

*or fell, a nonsuit is proper:* 66 S. C. 256; 69 S. C. 529; 72 S. C. 398; 61 S. C. 494. *Nonsuit is proper when complaint alleges that injury was due to one cause, but plaintiff testifies to a different cause and offers no testimony on the cause as alleged in his complaint:* 45 S. C. 278; 33 S. C. 198; 76 S. C. 561; 82 S. C. 338; 84 S. C. 60. *The nonsuit as to all three causes of action was properly granted, because while the plaintiff alleged negligence in each cause of action, he failed to prove any negligence whatsoever:* 45 S. C. 278; 179 U. S. 653; 181 Federal Reporter, p. 91. *Plaintiff's injuries were the result of the risks he assumed and he cannot recover:* 233 U. S., fol. 92 (Law Edition 1662); 102 S. C. 276. *None of the acts that plaintiff was performing were acts that would entitle him to the protection of the Federal Employers' Liability Act:* 208 Fed. Rep. 243. *The release signed by plaintiff is valid and binding and plaintiff cannot bring himself within the principles announced in 84 S. C. 275, or 106 S. C. 200. The offer to give a check is not tender:* 101 S. C. 32. *An action for damages cannot be maintained where a release is given for a valuable consideration, even though 'it be obtained by fraud, unless the consideration of the release has been paid or tendered back before suit was brought:* 56 S. C. 588; 61 S. C. 448; 84 S. C. 275; 106 S. C. 200.

February 23, 1920.

The opinion of the Court was delivered by Mr. Chief Justice Gary.

This is an action for damages under the interstate commerce law, and the appeal is from order of nonsuit. The complaint alleges:

"(1) That at the times hereinafter mentioned the defendant was and now is a railroad corporation owning property within the State and now operating freight and passenger trains as a common carrier for hire in Cherokee county, S. C., and other parts of the State, and into and from other

States; has a freight and passenger office at Blacksburg, with agents therein. That plaintiff is a resident and citizen of the State.

"(2) That at the times herein mentioned the plaintiff was an employee of the defendant, doing work at all times under the direction of the boss or superior officer of the defendant at various places on its line of road as bridge and trestle hand, and such other work as he was directed to do.

"(3) That while engaged in tearing down some bents of a bridge of the defendant, near Sumter, S. C., on or about March 1, 1916, with rope attached to the cap of said bents, under the direction of the boss in charge, which was very dangerous on account of unusual rough, boggy ground, underbrush, high weeds and grass, an uncovered drain and stream, and rotten timbers in bridge falling around—was being done in a very dangerous place and unsafe place to work. As the cap was being pulled off the bent, plaintiff was instantly forced upon some barbed wire, concealed upon the right of way of the defendant, the plaintiff did not know of, but which the defendant did know of, or by the exercise of due diligence could have known, and plaintiff became entangled in said barbed wire, and his legs and body badly cut, lacerated, and injured, from which he suffered much pain and distress in mind and body, and has ever since so suffered, and was disabled from work in consequence from the 27th of May to the 9th of August, 1916, due to the negligent, reckless, wanton, and wilful conduct of the defendant, its servants, and agents as above set forth: * * * ".

The defendant denied all the allegations of the complaint, except those in the first paragraph, and set up the defenses of contributory negligence, assumption of risk, and that prior to the commencement of the action the plaintiff, in writing, released the defendant from all liability.

At the close of the testimony for the plaintiff, the defendant's attorneys made a motion for a nonsuit; one of the grounds being that there was no negligence, but, if so, it

was the negligence of a fellow servant.   In disposing of this ground his Honor, the presiding Judge, thus ruled:

"This place is where they were repairing a trestle, and taking out old work and putting in new; so there can be no claim about its being unsafe and rotten timber, because that is the work they were engaged in—taking out old timber and putting in new timber.   Now, it appears to this Court, under the evidence taken in connection with the complaint, that the plaintiff has no cause whatsoever."

The plaintiff testified as follows: "Q. You say you were hurt where?   A. At Sumter, Green Swamp trestle, South Carolina.   Q. And you say Mr. Pope, I believe, was foreman there?   A. Yes, sir.   Q. Tell the jury how you happened to get hurt; what was the cause of it?   A. We set off some bents in the creek parallel with the water, and tied a rope to the cap, and me and several other men were pulling it, and we had to run to keep the cap from falling on us, and we run into the barbed wire fence, and we ran into the wire fence, and it cut one of them veins in two in my leg, and a place about two inches long.   Q. What sort of a place were you working in?   A. Right on the side of a swamp—weeds and boggy—about waist high.   Didn't any one know the wire was there at all.   It was about 50 feet from the trestle, and the cap came over whirling, and we had to get out of the way.   Q. Were the timbers you were handling sound?   A. Rotting."

Lonnie Moore, a witness for the plaintiff, thus testified: "Q. What was the cause of his getting hurt, do you know, Will?   (Mr. DePass objects, unless the witness saw the occurrence.)   A. I was on top of the trestle, and I had a bar, and Gilmore and them had a rope tied to the cap, and they had a strain on the cap with a rope to keep it from rocking and knocking down another bent.   I shoved out, and they had to keep pulling to keep it from falling on another bent, and by them pulling it they had to run away to keep it from falling on them.   Q. Had he not run, what would

likely to be the result? (Mr. DePass objects, on the ground that the question is leading.) Q. What kind of a place was it there, Will? A. It was swampy and grown up around there. * * * Q. *Why did you have to run?* A. *To save ourselves, to keep the cap from falling on us. Sometimes, on a high trestle, they fall more than 50 feet from the trestle."* (Italics added.)

The testimony tended to show that it was necessary for the plaintiff and the other servants to run to the place where he was injured, in order to prevent the cap from falling on them, and that the danger arising from the wire was not obvious, but hidden. Therefore, it was a question for the jury whether the plaintiff assumed the risk of his employment. *Lester v. Railway,* 93 S. C. 395, 76 S. E. 976; *Anderson v. Lumber Co.,* 99 S. C. 100, 82 S. E. 984; *Nelson v. A. G. & P. Co.,* 107 S. C. 1, 92 S. E. 194.

The fact that the defendant may not have had notice of the hidden danger, arising from the wire which was concealed, is a matter of defense, and is no part of plaintiff's cause of action. *Branch v. Railway,* 35 S. C. 405, 14 S. E. 808; *Hicks v. Railway,* 63 S. C. 559, 41 S. E. 753; *Richey v. Railway,* 69 S. C. 387, 48 S. E. 285; *Willis v. Manufacturing Co.,* 72 S. C. 126, 51 S. E. 538; *Grainger v. Railway,* 101 S. C. 73, 85 S. E. 231; *Prince v. Massasoit Co.,* 107 S. C. 387, 93 S. E. 2; *Rikard v. Middleburg Mills,* 101 S. E. 643. None of the cases cited by the respondent's attorney are applicable, as the testimony is to the effect that the place where the plaintiff was at work, was made dangerous by a concealed instrumentality, of which the plaintiff had no notice.

The fellow servant doctrine has no application to a case arising under the Federal Employers' Liability Act (U. S. Comp. St., secs. 8657-8665). Nor is the defense of contributory negligence available, except in mitigation of damages. *Mondou v. Railway,* 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44.

The respondent's attorney served the following notice:

"The defendant, upon the appeal of the above entitled case, will ask the Supreme Court (if they find that they cannot sustain the nonsuit on the ground stated by the Circuit Judge) to sustain the order of nonsuit upon the following grounds, to wit:

"(1) Because the Circuit Judge erred at the trial in allowing the plaintiff to amend his complaint in such a way as to bring his causes of action within the terms of the Employers' Liability Act, and thereby allowing him to change the nature of his action in such a way as to defeat the defendan' of its defenses of contributory negligence, negligence of a fellow servant, and assumption of risk, as had been set up in its answer.

"(2) Because the Circuit Judge erred in not sustaining the release interposed by the defendant as to first two causes of action, and in not granting a nonsuit thereon as to them when the testimony showed that the plaintiff had failed t return the consideration paid for said release before sui was brought.

"(3) Because the Circuit Judge erred in not granting the nonsuit upon the ground that, if there was any evidence of negligence, such negligence was committed and was the result of the act of a fellow servant, for which the defendant is in no way liable.

"(4) Because the Circuit Judge erred in not sustaining the motion for a nonsuit upon the ground that whatever injuries plaintiff sustained were the result of risks, which were plain, open, and obvious, and which he assumed when he entered the employment of the master.

"(5) Because the Circuit Judge erred in not granting the nonsuit upon the ground that the plaintiff was guilty of contributory negligence; the error being that, even if the defendant was negligent, yet the plaintiff himself was guilty of such negligence as contributed as a direct and proximate cause of his injuries."

What we have already said disposes of all these grounds except that numbered (2), which will be considered. When the plaintiff's attorney offered testimony to prove that the release was not valid, the record shows that the following took place:

"The Court: That goes along the time of an effort to compromise or settle this matter. (Argument.) Mr. Hardin: I am offering this, showing that this man, when he executed the paper, was deceived. Anything up to the beginning of the action. Mr. DePass: We move to strike all that testimony out, on the ground that it is an effort to show a compromise. The Court: Nevertheless, if it tends in any way to show deception, that he was led into this thing, and made to settle the claim for a grossly inadequate consideration, the jury ought to have that before them, whether this release is a valid one or not. That is one of the defenses of the answer—that he has released his claim."

In ruling upon the grounds of the motion for a nonsuit, his Honor thus stated his reasons for refusing the one numbered (2):

"The Court: There is some evidence that this party sent a check to the superintendent and offered to return the money to him. Mr. DePass: After the suit was filed. The Court: Yes, sir. Sometimes they don't know, until the answer is out, that the release is going to be put in. I wouldn't consider throwing the case out of Court on any such state of facts as that. * * * Now, it appears to this Court, under the evidence taken in connection with the complaint, that the plaintiff has no case whatsoever. Of course, I reject the defense absolutely about the release for $1. I don't think any responsible Court or a jury, with a man out of the woods could be held to have signed a release for $1 for damages. That would not get by in my Court."

When the defendant answered the complaint setting up the release as a defense, it had the right to make a motion

requiring the plaintiff to file a reply, stating whether the consideration for the release had been returned; and, if it had appeared that the plaintiff had not offered to return the money received by him, then the defendant could have demurred to the reply. But the defendant did not make such a motion, and the plaintiff had the right to offer evidence in denial or avoidance of the release. *Levister v. Railway,* 56 S. C. 508, 35 S. E. 207.        �23440

Reversed.