11457

HAMILTON RIDGE LUMBER CORPORATION *ET AL.* v. BOS-
TON INSURANCE COMPANY

(131 S. E., 22)

1. INSURANCE—COURTS FAVOR INTERESTS OF INSURED IN CONSTRUING
   POLICY.—Courts are inclined to favor interests of insured on ques-
   tions of construction of provisions of policy.

2. INSURANCE—CLAUSE HELD TO REQUIRE INSURANCE COMPANY TO
   REFUND UNEARNED PREMIUM ON CANCELLATION OR GIVE NOTICE
   THAT PREMIUM WOULD BE REFUNDED.—Clause in insurance policy
   providing method of cancellation *held* to require insurance com-
   pany to either return the amount of unearned premium or to no-
   tify insured that unpaid premium would be refunded on demand
   together with five days' notice of cancellation; alternative method
   of refund being as much a condition precedent to efficacy of pro-
   posed cancellation, as giving of notice.

3. CONTRACTS—PARTY SEEKING RELIEF IN CONTRACT MUST FIRST RE-
   TURN ALL BENEFIT RECEIVED.—Where a party seeks relief from
   contract into which he has entered, he must first return all benefit
   which he has received.

4. CONTRACTS—PARTY SEEKING TO RESCIND CONTRACT MUST RESTORE
   STATUS QUO AS NEARLY AS PRACTICABLE.—Party seeking to rescind
   a contract is in duty bound to restore *status quo* as nearly as
   practicable.

5. INSURANCE—INSURANCE COMPANY, AFTER CANCELLATION OF POLICY,
   HELD TO HAVE NEITHER RETURNED PREMIUM OR GIVEN NOTICE THAT
   IT WOULD BE RETURNED ON DEMAND.—Insurance company, cancel-
   ing policy under clause therein providing for return of unearned
   premium on cancellation or of notice it would be refunded on de-
   mand, *held*, in view of evidence showing return of incorrect amount
   of unearned premium, to have neither returned premium or given
   notice that it would be returned.

6. INSURANCE—INSURANCE COMPANY HAS NO RIGHT TO DEDUCT DIS-
   PUTED AMOUNTS FROM UNEARNED PREMIUM RETURNED ON CAN-
   CELLATION OF POLICY.—Insurance company has no right to deduct
   disputed amount due on policy from amount of unearned paid
   premium returned to insured on cancellation of policy.

7. INSURANCE—INSURED HELD TO HAVE HAD INSUFFICIENT NOTICE OF
   CANCELLATION OF POLICY.—Where agent of insurance company
   mailed letter inclosing notice of cancellation on afternoon of August
   26th, received by insured on 27th, and fixing date of expiration of
   policy as of August 31st, *held* that insured had only four days'
   notice, whereas policy provided for five days.

8. APPEAL AND ERROR—SUPREME COURT WILL NOT CONSIDER WAIVER OF DEFECTS IN CANCELLATION OF POLICY BY INSURED WHERE OBJECTION WAS NOT MADE IN LOWER COURT NOR IN SUPREME COURT BY EXCEPTION.—Supreme Court will not consider waiver on part of insured of defects in cancellation of policy, where objection was not made in Court below by pleadings nor in Supreme Court by exception.

9. ESTOPPEL—QUESTION OF WAIVER IS FOR JURY.—Upon question of waiver issue is generally one for jury.

Before SEASE, J., Hampton, February, 1923.   Affirmed.

Action by the Hamilton Ridge Lumber Corporation and another against the Boston Insurance Company.   From a judgment for plaintiffs, defendant appeals.

*Messrs. George Bryan* and *Douglas McKay,* for appellant, cite: *Cancellation of insurance policy; return of unearned premiums:* 55 S. C., 450; 33 S. E., 566; 207 S. W., 922; 54 Mich., 531; 50 Ohio St., 542; 35 N. E., 53; 172 Cal., 497; 157 P., 239; Ann. Cas., 1917-B, 907; L. R. A., 1916-F, 440. *Cases construing non-standard cancellation clauses:* 116 Md., 622; 82 A., 974; Ann. Cas., 1913-D, 490. *Form of cancellation notice:* 103 S. E., 771. *Return of less than full amount of unearned premium:* 93 S. E., 735; 91 Ind., 297; 81 Tenn., 340; 50 Ohio St., 542; 35 N. E., 53. *Insured may waive notice of cancellation:* 76 Ark., 180; 88 S. W., 917; 6 Ann. Cas., 440; 62 Ark., 382; 35 S. W., 1101; 103 Mich., 75; 61 N. W., 337. *Alteration of contract by one partner:* 74 Wis., 503. *Policy cancelled but retained by insured:* Black on Rescission and Cancellation, Sec. 484. *Acceptance of check by insured for unearned premiums:* 117 S. E., 157; 84 S. E., 502; 219 S. W., 153; 95 Miss., 754; 49 So., 740. *Recission of contract:* 14 S. E., 828. *Cases distinguished:* 113 S. C., 339; 97 S. C., 34; 84 S. C., 41; 71 S. C., 146; 56 S. C., 508; 52 S. C., 104; 38 S. C., 19.

*Messrs. George Warren* and *Chas. F. Katzenstein,* for respondents, cite: *Cancellation of insurance policy; return of unearned premiums:* 107 S. C., 393; 104 S. C., 403;

102 S. C., 115; 63 S. C., 192; 57 S. C., 358; 253 F., 83; 13 F., 74; 189 Pa. Sup. Ct., 132; 33 Pa. Sup. Ct., 496; 11 W. N. C. (Pa.), 558; 8 Pa. Dist. Ct., 261; 188 N. Y., 399; 155 N. Y., 163; 100 N. Y., 417; 158 N. Y. S., 198; 157 N. Y. S., 1; 43 N. Y. S., 632; 162 N. Y., 597; 13 App. Div., 519; 200 S. W., 229; 164 S. W., 919; 160 S. W., 1135; 156 S. W., 52; 170 Mo. App., 85; 45 S. W., 158; 75 Mo. App., 310; 195 P., 50; 184 N. W., 756; 129 Pa., 235; 105 P., 354; 86 Cal., 566; 47 Kan., 309; 54 Mich., 145; 95 Wis., 226; 70 N. W., 84; 82 A., 974; 81 A., 760; 45 N. J. L., 453; 183 Ill. App., 71; 177 Ill. App., 500; 132 Ill., 321; 84 So., 382; 89 S. E., 319; 12 L. R. A. (N. S.), 889; 2 Cooley's Briefs, 1047; Joyce on Ins., Secs. 1393 and 1671; Wood on Ins., 113; Richards on Ins., Sec. 288; May on Ins., 574. *Forfeiture of insured's rights under policy not favored:* 115 S. C., 53; 110 S. C., 315. *Insured entitled to notice of actual cancellation:* 113 S. C., 492; 6 F., 143. *Insured entitled to notice of cancellation in due time:* 113 S. C., 492; 101 S. E., 859; 94 S. C., 299; 45 N. J. L., 453; 195 P., 50.. *Agent without authority to cancel policy:* 119 S. E., 854; 158 N. Y. S., 198; 172 App. Div., 149; 105 Miss., 437; 62 So., 425; 186 P., 824; 109 U. S., 278. *Notice of cancellation without offer to refund unearned premiums:* 86 Cal., 566; 6 F., 143. *Cases distinguished:* 54 Mich., 532; 155 N. Y. S., 163; 26 App. Div., 91; 253 F., 83; 201 F., 515; 124 F., 52; 121 F., 937.

December 8, 1925.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

The action is upon a policy of fire insurance upon the lumber plant of the plaintiff lumber corporation for $31,-500, dated November 30, 1920, expiring one year thereafter, which plant was destroyed by fire on September 8, 1921. The insurance was made payable in event of loss to the plaintiff American Trust Company, mortgagee, as its interest might appear.

The defense of the insurance company was that prior to the fire the policy had been canceled in conformity with the provisions thereof relating to that subject.

At the close of the testimony the defendant moved for a directed verdict in its favor, which was refused. Upon motion of the plaintiff a verdict was directed by the Circuit Judge in its favor for the full amount claimed. The defendant has appealed, assigning error in the refusal of its motion and in the granting of that of the plaintiff.

The facts of the case as to which the parties are in substantial accord, are as follows:

In July, 1921, the lumber corporation had outstanding and of force four policies of insurance with the defendant company, aggregating $90,000, covering certain parts of the plant; the policy in this action being, as stated above, for $31,500 upon the planing mill, lumber, etc.

On July 15, 1921, the lumber corporation found it necessary to make certain repairs upon machinery, and made application for a "cease operations" permit for a period of 60 days. A controversy arose as to the payment of additional premiums on account of such permit; the agent of the insurance company demanding $705 therefor. The lumber corporation, refusing to accede to this demand, received notice that, if that amount was not paid by August 15th, all policies would be canceled. Accordingly, about August 26th, the general agent of the insurance company instructed one Dana, representative of the company at Columbia, to cancel the policies, and on that day Dana, by registered letters, mailed to the lumber corporation and to the American Trust Company, mortgagee, notices that the policies would "absolutely cease at noon, August 31, 1921." The letters were mailed on the afternoon of the 26th, and were received by the addressees, as evidenced by the return registry receipts, on August 27th.

Accompanying the letter to the lumber corporation was the check of Dana on a Columbia Bank for $139.57, "rep-

resenting the return premiums (on the four policies proposed to be canceled) due you, with deductions for premium charges for 43 days of the 60 days' permit for 'cease operations,' issued on July 19, 1921, on two policies."

The amount of the check, $139.57, was arrived at in this way:

| | |
|---|---:|
| Return premium on policy No. 40 ............$ | 64.58 |
| Return premium on policy No. 41 ............ | 68.74 |
| Return premium on policy No. 42 ............ | 75.00 |
| Return premium on policy No. 43 ............ | 65.62 |
| | $ 273.94 |

Against this sum was charged:

| | |
|---|---:|
| Premium earned on "cease operation" permits, dated July 19, 1921, 43 days on policy No. 40 .................................$ | 66.65 |
| Premium earned on "cease operation" permit, dated July 19, 1921, 43 days on policy No. 43 | 67.72 |
| Check to balance .......................... | 139.57 |
| | $ 273.94 |

The policies were numbered in figures of more than 2,-000,000. For convenience, the numbers given above are the last two figures. Instead of 2,332,640, the number is indicated as 40, and so on. No. 43 is the policy sued upon in this case.

There was no contention on the part of Dana that the charge for the "cease operations" permit was applicable to other policies than Nos. 40 and 43. Hence in lumping the return premiums and the deduction there was not enough

in the $139.57 check to pay the conceded amounts due for return premiums on Nos. 41 and 42:

Return premium on No. 41 ..................$  68.74
Return premium on No. 42 ..................    75.00

                                          $ 143.74
Amount of check .........................   139.57

Deficiency ...............................$   4.17

—which had to be made up out of the return premium on Nos. 40 and 43, for which there was no warrant.

The deduction charged to No. 40 was ..........$  66.65
The return premium was ...................    64.58

Leaving No. 40 in debt ....................$   2.07

The deduction charged to No. 43 (the present
     policy) was .........................$  67.72
The return premium was ...................    65.62

Leaving No. 43 in debt ....................$   2.10

Those two debit items .....................$   2.07
And ......................................    2.10

Make up the deficiency above stated in premiums
     due on Nos. 41 and 42 ................$   4.17

Now, a further complication arises: The agent, Dana, who transmitted the notices of cancellation, testified, and counsel for the insurance company conceded, that instead of $139.57 he should have remitted $390.43, a difference of $250.86, upon all four policies. Particularly, as to No. 43, that amount of the return premium should have been $98.09 instead of $65.62, a deficiency of $32.47; and that the charge of $67.72 for the "cease operations" permit should not have

been entered at all.    "The policy also had a clause permitting
'cease operations' without any further charge.    The charge
I made in the policy in suit for 43 days, $67.72 for 'cease
operations,' was in error."    Adding together the deficiency
in return premium $32.47, and the illegal charge of $67.72
for the permit, we have a total inadequacy of the tender as
to No. 43 of $100.19.    Instead, therefore, of tendering this
amount as the amount the insured was entitled to on policy
No. 43, the tender actually made was a debit item, as above
shown, of $2.10, to be made up out of the return premium
credited to Nos. 41 and 42, this statement of which $68.74
and $75 should have been $103.12 and $112.50, a deficiency
of $71.88.

In other words, the statement in effect declares:

We owe you on No. 41 .............$ 68.74
We owe you on No. 42 ............  75.00   $ 143.74

You owe us on No. 40, $2.07, and on No. 43,
    $2.10 ..............................     4.17

Here is check to balance ..................$    139.57

The appeal of the insurance company is based upon two
exceptions, which practically raise the single point that, un-
der the provisions of the cancellation clause, the payment
or tender of the "excess of paid premium above the *pro rata*
premium for the expired time" (which for convenience will
be referred to as the "unearned premium") was not made a
condition precedent, nor in any way vital to the right of
cancellation, but that the extension of the requisite notice
was of itself sufficient to terminate the obligation of the
insurance company.

No question is made as to the waiver by the insured or of
a partial tender being a sufficient compliance with the can-
cellation clause.    As will be seen later, upon a cancellation
of the policy by the insurance company, the insured became

entitled to the difference in cash between the amount of the premium paid for the entire term and the *pro rata* portion of it for the time the policy had been running.

The contention of the insurance company is that it was not necessary, in order to effectuate the cancellation, that it should have tendered or paid this unearned portion of the premium at the time the notice of cancellation was given, but that the cancellation was effected simply by the extension of the notice.

In view of the admitted fact that the insurance company did not tender or pay the amount of the unearned premium, to which the insured was entitled upon policy No. 43, at the time the notice was extended, or at any other time, it is manifest that the above position is the only one which the insurance company could have taken, except the inconsistent one that it was its duty to make such tender or payment, but that the insured had waived its right to urge that objection to the form of the attempted cancellation.

Nowhere in its pleadings or exceptions is the question of the waiver of the insured raised by the insurance company. Nowhere does it concede its duty to have made such tender or payment. It plants its defense upon the ground that the cancellation clause did not impose that duty upon it; and upon that contention it must stand or fall.

The question must, of course, be determined by a construction of the cancellation clause in the policy. I have not been able to find a single case in which a cancellation clause identical with that in the case at bar has been construed. Cases abound involving the construction of what is called the "New York standard form" of cancellation, which differs materially from the form in the present policy. They throw little light upon the proper construction of the modified form.

For convenient comparison the two forms are reproduced in parallel columns:

### The Old Form

"This policy shall be canceled at the request of the insured, or by the company, by giving five days' notice of such cancellation. If this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on the surrender of the policy or last renewal, this company retaining the customary short rate, except, that when this policy is canceled by this company giving notice, it shall retain only the *pro rata* premium."

### The New Form

"This policy shall be canceled at any time at the request of the insured in which case the company shall, upon demand and surrender of this policy refund the excess of paid premiums above the customary short rates for the expired time. This policy may be canceled at any time by the company giving to the insured a five days' written notice of cancellation, with or without tender of the excess of paid premiums above the *pro rata* premiums for the expired time, which excess, if not tendered shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand."

It may safely be assumed that this modification of the cancellation clause prepared by insurance companies was intended to secure some benefit to them. It was a stage in the evolution of policy contracts, constantly tightened as experience or judicial interpretation suggested; a course of action not at all the subject of unfavorable criticism, for it was clearly within their rights, but which, in the unequal contest, has inclined the Courts, in all questions of construction, to favor the interests of the insured.

Many Courts had decided, while the "old form" was of force, that a tender or payment of the unearned premium, must have accompanied the notice of cancellation; other Courts had decided to the contrary. This condition was naturally unsatisfactory to insurance companies, and in the tightening process, the "old form" was modified, manifestly for the purpose of setting at rest this controverted question, by providing that the insurance company, in giving the five days' notice of cancellation should be allowed to exercise its option in the matter of making a tender of the unearned premium; it might either return the unearned premium along with the notice of cancellation, or dispense with the return and along with the notice of cancellation, notify the insured that the unearned premium would be refunded on demand.

I think that it is clear that under this modified clause the insurance company was obliged to do one or the other, and that the alternative course adopted was constituted as much a condition precedent to the efficacy of the proposed cancellation as the giving of the notice. If the insurance company should undertake to comply with the conditions of cancellation by tendering the amount of the unearned premium, its duty was plainly to tender the whole amount. If it should prefer not to make such tender, it would be bound under the express terms of the clause to notify the insured that the unpaid premium would be refunded on demand. This certainly appears to be the plain meaning of the clause.

Considering the marked difference between the old and the new form, it does not appear to me that the decisions construing the old form have any force whatever. The contention of the insurance company is based entirely upon such decisions as, construing the old form, hold that a tender of the unearned premium is not necessary. They constitute but a small minority, as may be seen from the cases cited pro and con in 32 C. J., 1252, notes 53, 54. The great weight of authority is in favor of the proposition that,

even under the old form, the tender of the unearned premium is a condition precedent to the cancellation. 32 C. J., 1252, 1253. *German Ins. Co. v. Clarke,* 116 Md., 622; 82 A., 974; 39 L. R. A. (U. S.), 829, Ann. Cas., 1913-D, 481; note, 13 L. R. A. (N. S.), 884. *Insurance Co. v. King,* 108 Ark., 130; 156 S. W., 445. *Ins. Co. v. Burnett,* 79 Fla., 424; 84 So., 383. *Ins. Co. Walker,* 150 Ga., 163; 103 S. E., 407. *Van Valkenburgh v. Lenox Fire Ins. Co.,* 51 N. Y., 465. *Tisdell v. New Hampshire Fire Ins. Co.,* 155 N. Y., 163; 49 N. E., 664; 40 L. R. A., 765. *Gosch v. Ins. Co.,* 33 Pa. Super. Ct., 496. *Chrisman & Sawyer Banking Co. v. Hartford Fire Ins. Co.,* 75 Mo. App., 310. *Ins. Co. v. Isett,* 11 Wkly. Notes, Cas. (Pa.), 558. *Davison v. Ins. Co.,* 189 Pa., 132; 42 A., 2. *Quong Lue Sing v. Anglo-Nevada Assur. Co.,* 86 Cal., 566; 25 P., 58; 10 L. R. A., 144. *Manlove v. Ins. Co.,* 47 Kan., 309; 27 P., 979. *McGraw v. Ins. Co.,* 54 Mich., 148; 19 N. W., 927; 3 Joyce Ins., 2381-2831. *Davis Lumber Co. v. Ins. Co.,* 95 Wis., 226; 70 N. W., 84; 37 L. R. A., 131; Wood, Ins. § 113. *Bard v. Ins. Co.,* 108 Me., 506; 81 A., 870. *Lattan v. Ins. Co.,* 45 N. J. Law, 453. *Taylor v. Ins. Co.,* 25 Okl., 92; 105 P., 354, 138 Am. St. Rep., 906. *Payne v. Ins. Co.,* 170 Mo. App., 85; 156 S. W., 52. *Polemanakas v. Ins. Co.* (Tex. Civ. App.), 160 S. W., 1135; Richards on Ins., § 288; May on Ins., §§ 574-667. *Ins. Co. v. Clark* (Tex. Civ. App.), 200 S. W., 229. *Hathorn v. Ins. Co.,* 55 Barb. (N. Y.), 28. *Ins. Co. v. Tewes,* 132 Ill. App., 321. *Buckley v. Ins. Co.,* 188 N. Y., 399; 81 N. E., 165; 13 L. R. A. (N. S.), 889. *Giffey v. Ins. Co.,* 100 N. Y., 417; 3 N. E., 309; 53 Am. Rep., 202. *Commercial Co. v. Rice,* 93 Misc. Rep., 567; 157 N. Y. S., 1. *Hanford v. Ins. Co.,* 71 Wash., 240; 128 P., 235. *Smith Co. v. Assur. Co.,* 172 App. Div., 149; 158 N. Y. S., 198.

These decisions, construing as they do the old form, as to which there may have been some ground for doubting that the return of the unearned premium was so linked up

with the notice of cancellation as to constitute it a concurrent condition precedent, are based upon the ground that a party to a contract, having performed his part of it, and acquired valuable rights under it, cannot be subject to a rescission of the contract at the pleasure of the other by his merely giving notice of his determination to cancel it, without at the same time tendering the return of what he has received by reason of the contract. If this be true of the old form, it must be true of the new, for the additional reason that the tender of the unearned premium is explicitly made a condition precedent in the new form, concurrently with the notice of cancellation.

This view is entirely in accord with the decisions of this Court to the effect that, where a party seeks relief from a contract into which he has entered, he must first return all benefit which he has received. *Levister v. R. Co.,* 56 S. C., 508; 35 S. E., 207. *Price v. R. Co.,* 38 S. C., 199; 77 S. E., 732. *Burnett v. Tel. Co.,* 71 S. C., 146; 50 S. E., 780. *Worthy v. Oil Mill,* 77 S. C., 69; 57 S. E., 634; 11 L. R. A. (N. S.), 690; 12 Ann. Cas., 688. *Treadway v. Union Co.,* 84 S. C., 41; 65 S. E., 934. *McKenzie v. Sifford,* 52 S. C., 104; 29 S. E., 388. *Cochran v. R. Co.,* 97 S. C., 34; 81 S. E., 191. *McDowell v. R. Co.,* 113 S. C., 399; 102 S. E., 639. And also to the effect that a party seeking to rescind a contract is in duty bound to restore the *status quo* as nearly as may be practicable. *Ebner v. Haverty,* 131 S. E. ——, and cases cited therein.

But, assuming that a return of the unearned premium is not required under the provisions of the "old form" of the cancellation clause, it by no means follows that it is not required under the "new form" when the insurance company has exercised its option to do so. As has been shown, there are decisions which sustain the contention of the insurance companies that under the "old form" it was not necessary to make such return, while many denied it. When the insurance companies adopted the "new form," they cut loose

from those favorable decisions, and obligated themselves, along with the notice of cancellation, either to make the return or to notify the insured that the premium unearned would be refunded on demand. They made one or the other, at their option, a concurrent condition to an effectual concellation. Upon the exercise of the insurance company's option to make the return, the clause indicates unmistakably the concurrence of the two conditions to give the five days' notice and to return the unearned premium: "This policy may be canceled at any time by the company by giving to the insured a five days' written notice with   *   *   *   tender of the excess of paid premiums above the *pro rata* premium for the expired time," showing that endeavoring to avoid the effect of the prior decisions requiring a return of the unearned premium, they secured the desired option but inseparably connected the notice with the tender as essential conditions to the cancellation.

Having the option either to accompany the notice of cancellation with a return of the unearned premium or with a notice that it would be refunded on demand, the evidence shows beyond a controversy that the insurance company did neither. It attempted to exercise the option of returning the unearned premium with the notice of cancellation, but it is conceded that the remittance of $139.57 should have been $390.43, for all of the policies, a deficiency of $250.86, a little more than one-third of what should have been sent; and as to policy No. 43 the insurance company not only did not tender anything at all, but actually entered against it a debit charge of $2.10, which was deducted from what was due upon two of the other policies instead of giving it credit for $100.19, admittedly due; as counsel for appellant state in their printed argument:

"It is admitted that the proportion of this amount allotted *   *   *   as the unearned portion of the premium on policy No. 43 was insufficient by $100.19, and Mr. Dana admitted that he had made a mistake in his calculation."

The tender, so far as policy No. 43 is concerned, was not even a partial tender of the amount the insured was entitled to. The amount conceded to be due to policies 41 and 42 was $143.74 (which is admitted now to have been an error to the extent of $71.88). The check was for $139.57, $4.17 less than these policies were entitled to. All of the $139.57 check was applicable to them, leaving nothing for No. 43 but a debit item of $2.10.

Having attempted to exercise the option of accompanying the notice of cancellation with a tender of the unearned premium, naturally the insurance company omitted the notice required, when no tender was being made, that the unearned premium would be refunded on demand. The contention of the insurance company now is that, having tendered an insufficient amount, it is as if it had tendered nothing, and it may fall back upon the decisions construing the "old form" holding that the notice of cancellation is all that is required; that it need not have made any tender at all. Conceding that the two forms are so nearly identical as to warrant the application of these decisions to the construction of the new form, the insurance company is met with the inseparable obstacle that in the notice of cancellation it failed to give the notice imperatively demanded, where a tender is not made, that the excess premium would be refunded on demand.

That which actuated the cancellation of the policies is shown to be an indefensible demand of the insurance company that the insured pay $705 for the "cease operations" permits upon all four of the policies. This demand as to two of the policies was abandoned, as shown by the statement accompanying the notice of cancellation. The other two policies were debited with $134.37. Upon the trial Dana testified that the charge of $66.65 upon one of them should have been $20.15, and that the charge of $67.72 on policy No. 43 should not have been entered in any amount.

The demand for $705 has "shrunk to this little measure," $20.15.

The inclusion of this controverted demand, reduced though it was from $705 to $134.37 ($67.72 against policy No. 43), was enough of itself to invalidate the alleged cancellation. The policy is explicit as to what the insurance company shall tender upon the demand for a cancellation: "The excess of paid premium above the *pro rata* premium for the expired time"; that is, the unearned premium. It makes no provision for the insurance company to act as judge and jury as to any controverted claim it may have against the insured. It might as well have offset any other claim in contract or tort. In this case the insurance company attempted not only to deduct a controverted claim, but one in which upon the trial it was forced to admit there was no virtue, with the exception of $20.15. But, if it was all good, the insurance company had no right in exercising its conventional method of cancellation to deduct it. *Quong v. Ass'n,* 86 Cal., 566; 25 P., 58; 10 L. R. A., 144.

A further objection to the validity of the attempted cancellation is this: The policy provides that five days written notice shall be given the assured of the cancellation. The agent mailed a letter inclosing the notice on the afternoon of August 26th. It was received on the 27th. The date of the expiration was fixed as of August 31st. The insured therefore had only four days' notice.

"So, where the policy provides for a specified number of days' notice, the time begins to run from the receipt of the notice by the insured." Note, 39 L. R. A. (N. S.), 830, citing many cases.

In *Ins. Co. v. Clarke Co.,* 116 Md., 622; 82 A., 974; 39 L. R. A. (N. S.), 829, Ann. Cas., 1913-D, 488, the notice was mailed on the 15th, the cancellation to take effect on the 20th; the registered letter was received on the 17th, the Court said:

"The insured therefore from the face of the papers had not five but three days' notice of the appellant company to cancel the policy."

Another point in this connection worthy of consideration is this:   The policy required five days' notice, which, under the general rule of computation of time, requires that the first day be excluded and the whole of the fifth day thereafter be counted.   The notice was mailed on the 26th, and the date of expiration was fixed at noon on the 31st.   If the insured had received the notice on the 26th, he would have been entitled to the 27th, 28th, 29th, 30th, and the whole (not limited to noon) of the 31st.   Not having received it until the 27th, the time allowed was only the 28th, 29th, 30th, and half of the 31st, three and one-half days.

In 3 Cooley, Briefs Ins., § 2795, it is said:

"In computing time under a notice of cancellation, the ordinary rule of excluding the first day and regarding the days as beginning and ending at midnight will be applied."

See, also, *Malin v. Ins. Co.,* 203 Mo. App., 153; 219 S. W., 143.

I do not deem it necessary or proper to consider the matter of the alleged waiver, on the part of the insured, of the palpable defects in the cancellation, for such objection was not made in the Court below by pleadings, nor in this Court by exception.   I may say, however, that the evidence of it was far from being so conclusive as to justify the Circuit Judge in deciding it as a question of law; the general rule being that, upon a question of waiver, the issue is one of fact for the jury.

I think that the judgment should be affirmed, and it is so ordered.

MESSRS. JUSTICES MARION and BONHAM, DENNIS, DE-VORE, SHIPP, WILSON, RICE, JOHNSON, MAULDIN, TOWNSEND, HENRY and MANN, Circuit Judges, concur.

MR. CHIEF JUSTICE GARY and MR. JUSTICE WATTS and

MESSRS. ACTING ASSOCIATE JUSTICE R. O. PURDY and FEATHERSTONE, Circuit Judge dissent.

MR. ACTING ASSOCIATE JUSTICE R. O. PURDY: This case was duly commenced on 4th January, 1923. The issue made by the pleadings was whether or not an insurance policy for $31,500 on the plant of the Hamilton Ridge Lumber Corporation at Estill, S. C., was in effect on September 8, 1921, when the plant was destroyed by fire; the defendant by proper pleadings setting up due cancellation of the policy. It came to trial before the Hon. Thos. S. Sease and a jury at Hampton on 16th February, and was concluded that day. After all the evidence was in, counsel for the defendant moved for the direction of a verdict in its favor. This was denied by the trial Judge, who, however, ruled, plaintiff's counsel agreeing, that there was only a question of law involved. This he decided in favor of the plaintiff, and upon motion of plaintiff directed a verdict against the defendant for $31,500, together with interest and costs. Judgment was duly entered, and in the requisite time defendant gave notice of its intention to appeal therefrom to this Court. The appeal herein is based on exceptions taken to the refusal of the Circuit Judge to direct a verdict in favor of the defendant and to his directing a verdict in favor of the plaintiff.

Exceptions 1 and 2 present the complaint against the judgment of the Circuit Court. They are as follows:

"(1) The evidence established that the notices requisite to cancellation of the policy were given, and this was sufficient under its requirements to terminate the obligation of the defendant as an insurer; hence the trial Court erred in overruling defendant's motion for a directed verdict.

"(2) The trial Judge erred in holding that Agent Dana's failure to return the proper sum as unearned premium continued the policy in force, and in directing a verdict for the plaintiff, because under the provisions of the policy the payment of the unearned premium was not a condition pre-

cedent nor in any way vital to the right of cancellation, and notices of cancellation, being given in requisite time, were sufficient to terminate the insurance relation."

The policy of insurance has this clause in it:

"This policy shall be canceled at any time at the request of the insured; in which case the company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rate for the expired term.   This policy may be canceled at any time by the company by giving the insured a five days' written notice of cancellation with or without tender of the excess of paid premium for the expired time; which excess, if not tendered, shall be refunded on demand.   Notice of cancellation shall state that said excess premium (if not tendered) shall be refunded on demand."

It will be seen by this clause and provision thereof that the company can cancel the policy by giving to the insured a five days' written notice of cancellation with or without tender of the excess of paid premium above the *pro rata* premium for the expired time, which excess, if not tendered, shall be refunded on demand.   The interpretation of this clause is that, upon the expiration of the required notice by the company of its intention to cancel the policy, the relation between it and the assured becomes nothing more than that of debtor and creditor.

The minds of the parties met upon the matter of cancellation, by receipt by assured of the cancellation notice given by the company and received by the assured more than ten days before the fire, and by the acceptance by the assured of the check and cashing the same, for the unearned premium.

His Honor necessarily based his judgment upon the fact that, because a mistake had been made by the agent of the company in calculation, and in not remitting to the insured a check for full amount of the unearned premium, the cancallation was void.   The insured accepted the check as sent;

cashed it; and did not notify the company of any error in calculation of the amount of unearned premium.

The express agreement of the parties, and both parties were bound thereby, was that it should be effective "with or without a tender of the excess of paid premium above the *pro rata* premium for the expired time, which excess, if not tendered, shall be refunded upon demand." To hold otherwise would ignore the contract which both parties made.

There was a cancellation clause under the old, before the present cancellation clause was adopted, and counsel argue that most of the decisions of the Courts were construing the force and effect of that old cancellation clause.

"Under a fire insurance policy in the New York standard form providing that it might be canceled at any time at the request of the insured, or by the insurer, by giving five days' notice of such cancellation, and that if the policy should be canceled as provided the unearned part of the premium actually paid should be returned on surrender of the policy or last renewal, the insurer retaining the customary short rate, except that on a cancellation by it by giving notice it should retain only the *pro rata* premium, the giving of the five days' notice was sufficient to cancel the policy, and the return of or offer to return the premium is not an essential element of the cancellation." *Mangrum v. Law Union, etc., Ins. Co.,* 172 Cal., 497; 157 P. 239, L. R. A., 1916-F, 440, Ann. Cas. 1917-B, 907.

Our own case of *Bost v. Volunteer Life Insurance Co.,* 114 S. C., 405; 103 S. E., 771, sustains the underlying principles, and is in substantial accord with the Mangrum and similar cases.

The contention of the respondent in the Court below and here that the notice in this case was not properly given because it did not say that "the excess premium (if not tendered) will be refunded on demand," is untenable, because the facts show that in the notice the cancellation clause of the policy was given in full, word for word, and that the

check for what the agent estimated to be the *pro rata* of the unearned premium was inclosed with the notice.

The return by the insurer of less than the correct amount of unearned premium does not continue the policy in force. *Johnson & Stroud v. R. I. Insurance Co.,* 174 N. C., 201; 93 S. E., 735. We think that, when the respondent accepted and cashed the check sent by the insurer to the insured, retaining this check without any objection, and not returning it within a reasonable time, and notifying the agent that he demanded the balance of unearned premium, its conduct necessarily constituted a waiver. Or if he did not consider the notice sufficient, and he intended to contend that the policy was not canceled, he should have returned the check; but he retained it and cashed it. That shows an acceptance and waiver.

We are of the opinion that the contract of insurance made by the parties is upon a fair and reasonable interpretation; that the payment or tender of the unearned premium was not necessary; that the appellant gave all that was necessary in the notice to cancel the policy, and was entitled to a directed verdict as asked for before his Honor in the Circuit Court; and that Exceptions 1 and 2 should be sustained.

Exception 3 should be sustained; the proposed amendments being in violation of the rules of this Court.

Judgment for the plaintiff should be reversed and judgment entered for the defendant.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS, and FEATHERSTONE, Circuit Judge, concur.