In the Matter of NATIONAL DISCOUNT CORPORATION, Bankrupt.

No. B/1892.

United States District Court
W. D. South Carolina,
Spartanburg Division.

Jan. 25, 1963.

See also 211 F.Supp. 261.

Neville Holcombe, Robt. F. Chapman, T. Sam Means, Jr., Spartanburg, S. C., for R. Emmet Kerr, trustee in bankruptcy for Nat. Discount Corp.

William H. Smith, Gen. Counsel, S. C. Ins. Dept., Columbia, S. C., T. Emmet Walsh, Spartanburg, S. C., J. Monroe Fulmer, Fulmer, Barnes & Berry, Columbia, S. C., for William F. Austin, Chief Ins. Comr. of S. C., as receiver for Nat. Fidelity Ins. Co.

Robert L. Stoddard, Moore & Stoddard, Spartanburg, S. C., for receiver for Title Ins. & Guaranty Co.

Frank A. Lyles, Lyles & Lyles, Spartanburg, S. C., for receiver for Cudd & Coan Underwriters, Inc.

WYCHE, District Judge.

The question of the rank of certain debentures issued by the National Discount Corporation, now in bankruptcy, in relation to its other debts, is before me on the testimony, evidence and the record introduced before the Referee in Bankruptcy.

After a consideration of oral arguments and written briefs submitted by the attorneys for the parties, and the record in the case, I make the following

Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

National Discount Corporation, before it was adjudged a bankrupt, was engaged in the finance business, and while so engaged it issued "capital debentures" of which $640,000.00 in face value were outstanding and unpaid when it was adjudged a bankrupt. These debentures contained the following provision: "The indebtedness evidenced by the debentures issued hereunder, and all renewals and extensions thereof, will at all times and in all respects be wholly subordinate and junior in right to (a) all bank debts, notes and other commercial paper having a stated maturity of not more than twelve (12) months from date of origin, and any renewal or renewals thereof, from time to time, in whole or in part, of not more than twelve (12) months stated maturity for each renewal; (b) all indebtedness payable not more than nine months after notice of demand; and (c) at the Company's election, superior debentures to be hereafter issued not in excess of twenty times the Company's combined capital and surplus."

By the terms of these debentures, the holders had the right, upon the occurrence of any of several "events of default" to accelerate the maturity of all debentures of that issue, subject, however, to the following proviso (which one or more of the later debentures appear to have omitted): " * * * provided, however, no payment of principal or interest shall be made upon the debentures issued hereunder unless the indebtedness to which they are subordinated shall be first paid in full."

Of the $640,000.00 of debentures outstanding at the time the National Discount Corporation was adjudged a bankrupt, $250,000.00 were issued as of October 1, 1953, $250,000.00 were issued as of October 1, 1954, all with 20-year maturities. These debentures were offered for sale to the public in accordance with offering circulars filed, prior to the respective offering dates, with the Securities and Exchange Commission. These circulars designated the debentures "20-year Capital Subordinated Debentures", and described them as containing the same subordination provision and the same acceleration provision (with the same proviso) as set out above.

The books and affairs of National Discount Corporation were audited annually by an independent certified public accountant, and the annual audit reports were distributed to the bank line creditors. These audit reports listed all the outstanding debentures in the company's balance sheet as "Twenty Year 6% Subordinated Debentures" and contained the following note: "The indebtedness evidenced by the debentures are at all times and in all respects wholly subordinate and junior in right to (a) all bank debts, notes and other commercial paper, having a stated maturity of not more than twelve months from the date of origin, and any renewal or renewals thereof, from time to time, in whole or in part, of not more than twelve months stated maturity for each renewal; (b) all indebtedness payable not more than nine months after notice of demand; and (c) at the Company's election, superior debentures to be hereafter issued not in excess of twenty times the Company's combined capital and surplus."

While a going concern, the National Discount Corporation borrowed large sums of money from numerous banks in several of the southeastern states. All of these loans were evidenced by notes having stated maturities of less than twelve months from date of origin, and thus came within the first category of indebtedness set out in the subordination provision. At the time National Discount Corporation was adjudged a bankrupt, these bank notes were outstanding in the total amount of $2,312,695.20.

Three insurance companies and one other company, all of which were related in ownership and management to National Discount Corporation, owned $463,700.00 of the debentures at the time of bankruptcy. These four companies were National Fidelity Insurance Company, Title Insurance & Guaranty

Company, Cudd & Coan Underwriters, Inc., and Atlantic Mutual Fund. A. D. Cudd, Jr., President of National Discount Corporation and a large stockholder therein, was also President of National Fidelity Insurance Company, President of Title Insurance & Guaranty Company and Vice President of Cudd & Coan Underwriters. W. D. Coan, Vice President of National Discount Corporation, was also Vice President of National Fidelity Insurance Company, Vice President of Title Insurance & Guaranty Company, and President of Cudd & Coan Underwriters, Inc. Title Insurance & Guaranty Company was for a time owned by National Discount Corporation. Atlantic Mutual Fund was owned by National Fidelity Insurance Company and Title Insurance & Guaranty Company. These four companies are insolvent and are presently being liquidated in State receiverships. The remaining debentures of National Discount Corporation, in the amount of $176,300.00, were owned by other persons, firms and corporations.

The four companies in receivership are contending that the subordination provision of the debentures should not be enforced in bankruptcy, and that the indebtedness represented by the debentures they hold should be paid on a parity with the bank debts on the ground that the debentures were acquired by these related companies in transactions which were not conducted at arm's length, and that the banks, at the time of extending credit, knew or should have known that the debentures were held by related corporations whose dealings with National Discount Corporation were suspect. The owners of the other debentures are not making this contention.

The annual audit reports of National Discount Corporation, which were furnished to the credit line banks each year, did not disclose the ownership of the debentures which were outstanding, and there is nothing in the record to indicate that any of the banks knew who owned them. There is nothing in the record to indicate that more than a few of the banks knew that these four companies (other than Title Insurance & Guaranty Company, which for a while was owned by National Discount Corporation) existed, or, if they did, that they were related by stock ownership or management to National Discount Corporation.

The creditor banks relied upon the truth and accuracy of the annual audit reports in extending bank credit to National Discount Corporation; they considered the debentures a part of the capital base of the company, which would increase its borrowing capacity; and they would not have made the loans they did to National Discount Corporation if they had not considered all the debentures subordinate in rank to the bank loans. The practice of issuing subordinated debentures is a common one among finance companies.

### CONCLUSIONS OF LAW

The authorities appear to be uniform to the effect that a subordination provision, such as the one involved here, is enforceable in bankruptcy, and that the bankruptcy court must give effect to it in fixing the order in which dividends are paid.

■ The statute, 11 U.S.C.A. § 105, sub. a, which provides that dividends of an equal per centum shall be declared and paid on all allowed claims, except such as have priority or are secured, is not a limitation on the court in this respect. In Re Handy-Andy Community Stores, (D.C.La.) 2 F.Supp. 97 (1932); Bird & Sons Sales Corporation v. Tobin, (C.A. 8) 78 F.2d 371, 100 A.L.R. 654 (1935); Annotation, 100 A.L.R. 660; Searle v. Mechanics' Loan & Trust Co., (C.A. 9) 249 F. 942 (1918), cert. den. 248 U.S. 592, 39 S.Ct. 67, 63 L.Ed. 437; Prudence Realization Corp. v. Geist, 316 U.S. 89, 62 S.Ct. 978, 86 L.Ed. 1293 (1942).

On the contrary, the court must give effect to a valid contract fixing the order in which dividends are to be paid on claims. 6 Am.Jur., Bankruptcy, Sec. 569; In re Hicks-Fuller Co., (C.A. 8) 9 F.2d 492 (1925); Bird & Sons Sales Corporation v. Tobin, supra; St. Louis Union

Trust Co. v. Champion Shoe Machinery Co., (C.A. 8) 109 F.2d 313 (1940); In Re Geo. P. Schinzel & Son, (D.C.N.Y.) 16 F.2d 289 (1926); In Re Associated Gas & Electric Co., (D.C.N.Y.) 53 F. Supp. 107 (1943), affirmed, Elias v. Clarke, (C.A. 2) 143 F.2d 640 (1944), cert. den. 323 U.S. 778, 65 S.Ct. 191, 89 L.Ed. 622; Bank of America National Trust & Savings Ass'n v. Erickson, (C.A. 9) 117 F.2d 796 (1941).

In Remington on Bankruptcy, Vol. 6, Sec. 2874, the rule is stated as follows: "It is well recognized that, by conduct or agreement, by having obtained special benefits, or because of their own relationship to the bankrupt or undertaking of his obligations, and the like, some of the creditors of a bankrupt may not equitably be entitled to share in the assets of the estate on a parity with others. By way of simple illustration, they may have validly agreed to subordinate their rights or claims to the distributive right of another, which they may, of course, do, as long as they do not impinge upon statutory priorities."

The Court, in Bird & Sons Sales Corporation v. Tobin, supra, in holding valid and enforceable a pre-bankruptcy agreement by certain creditors of a bankrupt to subordinate their claims to all future indebtedness incurred by the bankrupt, said: "By its adjustment of the order of payment the bankruptcy court conformed the distribution of the estate to accord with the rights of the parties, as such rights were fixed by their own contract. The contract violated no public policy nor the spirit of the bankruptcy law, but was entered into by the appellant and relied upon by those who extended credit on the faith of it in the hope that Barney Grosberg, Inc., could be maintained as a going concern."

In In Re Aktiebolaget Kreuger & Toll, (C.A. 2) 96 F.2d 768 (1938), certain debenture holders sought to share on a parity with general creditors, despite a provision in the debentures that, in the event of liquidation, they were to be paid before stockholders but after all other debts had been paid. The Court denied the contention of the debenture holders, pointing out that a subordination provision would be meaningless in a solvent corporation.

The claimants who are seeking to strike down the subordination provision here say that the debentures were issued by the National Discount Corporation for the purpose of making its financial records appear better than they actually were, so that it could borrow more money from the banks on its financial statement. It is implicit in their contention that the National Discount Corporation issued debentures to these companies through manipulated transactions in which the National Discount Corporation did not receive full value in exchange for the debentures. The testimony showed, in fact, that in some instances the National Discount Corporation received nothing at all.

There is nothing in the record to charge the creditor banks with knowledge of any wrongful manipulation between the National Discount Corporation and the four related corporations, if in fact there were any. None of the banks knew that the debentures had been issued to these corporations, and they had no reason to inquire about their ownership. Very few of the more than forty banks involved knew that these corporations (except Title Insurance & Guaranty Co., which was owned for a time by the National Discount Corporation) were related to the National Discount Corporation in any way. The banks had a right, in the absence of any reason to the contrary, to rely upon the National Discount Corporation's published annual audit reports, which stated that the debentures were subordinated to their debt.

The holders of these debentures took them with the subordination provision written into them. In doing so, they agreed that the banks would be paid first. These were contracts between the issuing corporation and the debenture holders for the benefit of the banks and others who might advance credit of the kind described in the subordination provision. Contracts for the benefit of third

parties are valid and enforceable by the third parties. Johnson v. American Railway Express Co., 163 S.C. 191, 161 S.E. 473 (1931); Pharr v. Canal Ins. Co., 233 S.C. 266, 104 S.E.2d 394 (1958); United States v. Insurance Co. of North America, (D.C.S.C.) 65 F.Supp. 401 (1946), affirmed, 4 Cir., 159 F.2d 699. Debentures containing subordination agreements are common in the field of retail financing.

There is no reason why such a contract should not be enforced in bankruptcy. If the bankrupt were solvent, the provision would be meaningless. To deny its validity in bankruptcy would destroy a very essential term of the contract on which the bank creditors relied in extending credit to the National Discount Corporation. I must enforce the contract as written.

Those attacking the subordination provision cite in support of their position a number of cases which hold that fraudulent transactions between a corporation and its officers or directors, or transactions between two corporations with common officers or directors, are voidable at the election of the victim. These cases are not relevant here. The question here is whether or not a contract provision in the debentures, inserted for the benefit of certain creditors who might extend credit to the corporation on the strength of it, will be upheld, insofar as the rights of the creditors are affected.

 The four related corporations may well have a right, as to the bankrupt, to rescind their contracts. In that event, they would be entitled to assert claims against the bankrupt, not for the face amount of the debentures they hold, but for the consideration, if any, they parted with. Hamilton Ridge Lumber Corp. et al. v. Boston Ins. Co., 133 S.C. 472, 131 S.E. 22 (1923). However, any right of rescission between the parties could not affect the right of the bank creditors, who, in good faith, advanced credit in reliance upon the contract.

There is no reason, in law or equity, why the contractual rights of the creditors who come within the terms of the subordination provision should not be recognized and enforced in bankruptcy. To hold otherwise would not only strike down the rights which these creditors acquired in good faith, for full value and without notice of any infirmity in the contracts, if, in fact there were any, but would elevate some, but not all, of the debenture holders to the rank of those creditors to whom they had contracted to be subordinate. Such a result is a novel one and in my opinion should not be allowed.

Under the authorities, the creditors whose claims fall within the category fixed by the subordination provision of the debentures are entitled to be paid in full before any dividends are paid to the holders of the debentures. The Trustee, in paying dividends to creditors, must give full effect to the subordination provision of the debentures, and

It is so ordered.